Richard LINDSEY

v.

## TRINITY COMMUNICATIONS, INC. et al.

Supreme Court of Tennessee, at Nashville.

June 4, 2008 Session.

Jan. 12, 2009.

Marc H. Harwell and Benjamin T. Reese, Chattanooga, Tennessee, Peter D. Kennedy, for the appellant, Texas Mutual Insurance Company.

Joseph R. White, Chattanooga, Tennessee, for the appellees, HFC Services and Broadband Specialties, Inc.

Thomas L. Wyatt, Chattanooga, Tennessee, for the appellee, Richard Lindsey.

Robert J. Uhorchuk, Chattanooga, Tennessee, for the appellees, Trinity Communications, Inc. and St. Paul Fire and Marine Insurance Company.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., and FRANK F. DROWOTA, III, Sp.J., joined.

In this workers' compensation case, the plaintiff was injured while splicing cable for the defendant subcontractor. The subcontractor did not have workers' compensation insurance, and the plaintiff therefore filed suit against the intermediate subcontractor and cable company for benefits under Tennessee Code Annotated section 50-6-113. The intermediate subcontractor's workers' compensation insurance carrier, a Texas company, moved for summary judgment, arguing that the trial court did not have personal or subject matter jurisdiction. The defendants also argued that the plaintiff could not recover under Tennessee Workers' Compensation Law because he was an independent contractor and not an employee. The trial court held that the plaintiff was an employee of the subcontractor and a statutory employee of the intermediate subcontractor and cable company, that the trial court had both personal and subject matter jurisdiction over the Texas insurance carrier, and that the plaintiff was entitled to temporary total disability benefits, permanent partial disability benefits, and medical benefits. We hold that the trial court did not have personal jurisdiction over the Texas insurance carrier but that the plaintiff is entitled to recover benefits as an employee of the subcontractor and as a statutory employee of the intermediate subcontractor. Therefore, we reverse in part and affirm in part the judgment of the trial court and remand for proceedings consistent with this opinion.

### Facts & Procedural History

In November 2003, Trinity Communications, Inc. ("Trinity"), a cable television provider in Marion County, Tennessee, contracted with Broadband Specialists, Inc. ("Broadband"), a Texas corporation, to install a cable system in Marion County. Broadband subsequently subcontracted with HFC Services ("HFC"), a Texas partnership, to perform some of the work on the project. HFC hired the plaintiff, Richard Lindsey ("Lindsey"), to splice cable for the project.

On May 18, 2004, Lindsey was injured while splicing cable. He subsequently filed this action against the following: Trinity; Trinity's workers' compensation insurance carrier, St. Paul Fire and Marine Insurance Company ("St. Paul Fire and Marine"); Broadband; Broadband's workers' compensation insurance carrier,

Texas Mutual Insurance Company ("Texas Mutual"); and HFC.

During the course of several hearings, the trial court held that Lindsey was an employee of HFC, not an independent contractor, and was eligible to receive benefits under the Tennessee Workers' Compensation Law. The trial court found that HFC, Lindsey's primary employer, had no workers' compensation coverage and therefore applied Tennessee Code Annotated section 50–6–113(a) (2005).[1] The trial court held that Broadband qualified as a "statutory employer" of Lindsey under section 50–6–113(a) and ordered Texas Mutual, Broadband's workers' compensation insurer, to pay a portion of the award. The trial court also concluded that Trinity qualified as Lindsey's "statutory employer" under section 50–6–113(a) and required St. Paul Fire and Marine, Trinity's workers' compensation insurer, to pay an unspecified portion of the award.

At the conclusion of a trial held on June 4, 2007, the trial court awarded Lindsey temporary total disability benefits for fifty-two weeks, permanent partial disability benefits based on 55% disability to the body as a whole, and medical benefits totaling $127,190.00 for treatment of his work-related injuries.

Texas Mutual appealed the trial court's decision, arguing that the trial court lacked both personal and subject matter jurisdiction over Texas Mutual, that the trial court erred in applying Tennessee's "statutory employer" rule under section 50–6–113(a) to a policy governed by Texas law, and that Texas Mutual's insurance policy with Broadband does not provide coverage to employees of Broadband's sub-contractors. Trinity also appealed the ruling of the trial court, arguing that Lindsey is an independent contractor and that Trinity is not a principal contractor under section 50–6–113(a). We granted review before the case was heard by a Special Workers' Compensation Appeals Panel.

### Analysis

#### I. Jurisdiction over Texas Mutual

Texas Mutual is a non-profit mutual insurance company created by the Texas Legislature to create competition in the Texas market, to guarantee workers' compensation insurance in Texas, and to serve as an insurer of last resort in Texas. *See* Tex. Ins.Code Ann. art 5.76–3(c) (2005). Texas Mutual issues workers' compensation insurance policies only in Texas to Texas companies. Texas Mutual's workers' compensation insurance policy ("the policy") with Broadband states that the workers' compensation law applicable to the policy is the law of Texas. In a section entitled "Locations," the policy states that it covers only work locations in Texas.

■ The trial court found that Texas Mutual consented to personal jurisdiction in Tennessee based on a provision in Broadband's coverage contract that states, "Jurisdiction over [insured] is jurisdiction over us for purposes of workers' compensation law. We are bound by decisions against [insured] under that law, subject to the provisions of the policy that are not in conflict with that law." It is undisputed that the trial court had jurisdiction over Broadband, Texas Mutual's insured. We are unpersuaded, however, that this provision shows Texas Mutual's consent to ju-

---

1. Tennessee Code Annotated section 50–6–113(a) provides:

   A principal or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

risdiction in Tennessee. The agreement defines the term "worker's compensation law" as the law of the territory named in Item 3.A., which is Texas.[2] Thus, under a plain reading of this provision, Texas Mutual consented to jurisdiction only under the laws of Texas.

■■■ In the absence of consent, Tennessee courts may exercise personal jurisdiction over nonresident defendants under the long-arm statute, Tennessee Code Annotated section 20–2–214 (1994), for any reason not inconsistent with the state or federal constitutions. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn.2001); *see J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn.1992). The Due Process Clause of the Fourteenth Amendment requires that a nonresident defendant be subject to personal jurisdiction "only if he has minimum contacts with the forum such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Due process requires that a defendant have " 'fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign.'" *J.I. Case Corp.*, 832 S.W.2d at 532 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Courts recognize two types of personal jurisdiction: general and specific. A court may exercise general personal jurisdiction over a defendant when the defendant maintains "continuous and systematic" contacts within the forum state, *id.* at 532 (quoting *Int'l Shoe*, 326 U.S. at 317, 66 S.Ct. 154), such that "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318, 66 S.Ct. 154; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (finding that the cause of action did not arise from the defendant's activities within Texas, the Court had to determine whether the defendant's contacts with Texas were of such a "continuous and systematic" nature as to allow the Texas court's assertion of personal jurisdiction).

■ In this case, Texas Mutual was created by the Texas legislature to offer insurance to Texas companies. Texas Mutual does not do business in Tennessee, nor does it provide insurance to Tennessee companies. Although Texas Mutual may insure Texas-based employees who work temporarily out of state, the record contains no evidence of the frequency of this occurrence in Tennessee. In addition, Texas Mutual maintains a website offering insurance quotes that may be viewed in other states, but the insurance may be purchased only by Texas companies. These limited contacts clearly do not rise to the level of "continuous and systematic" contacts necessary for the exercise of general personal jurisdiction by Tennessee courts.

■ In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant "when a commer-

---

**2.** Tennessee Code Annotated section 50–6–408 (2008) requires all policies insuring payment of compensation to include a clause stating that "[j]urisdiction of the insured for the purpose of this chapter shall be jurisdiction of the insurer or insurers." The agreement in this case, however, was not executed under Tennessee law, and thus section 50–6–408 has no effect.

cial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities." *J.I. Case Corp.,* 832 S.W.2d at 532 (citing *Burger King Corp.,* 471 U.S. at 472–73, 105 S.Ct. 2174). The defendant's connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In this case, Texas Mutual did not direct any activity toward the citizens of Tennessee. Although Texas Mutual provided workers' compensation insurance coverage to Broadband, the policy purported to cover only Broadband employees working in Texas. Texas Mutual did not direct any activities toward the citizens of Tennessee and had no reasonable expectation that it would be haled into court in Tennessee under the terms of its agreement with Broadband. Thus, the court may not exercise specific personal jurisdiction over Texas Mutual.

There is no evidence in this case that Texas Mutual consented to personal jurisdiction, nor is there general or specific jurisdiction. We therefore conclude that the trial court erred in exercising personal jurisdiction over the defendant, Texas Mutual. Accordingly, we need not consider the other issues raised by Texas Mutual: whether the trial court erred in exercising subject matter jurisdiction over the policy or whether the policy provided coverage to Lindsey as an employee of Broadband's subcontractor, HFC.

## II. Lindsey's Employment Status

■ The Workers' Compensation Law requires employers to compensate employees for injuries arising out of and occurring in the course of employment. *See* Tenn.Code Ann. § 50–6–103 (2005). To recover benefits under Tennessee law, Lindsey must be an employee of HFC.

■ The determination of whether a plaintiff is an employee or an independent contractor is a question of law, *Cromwell Gen. Contractor, Inc. v. Lytle,* 222 Tenn. 633, 439 S.W.2d 598, 600 (1969), which we review de novo with no presumption of correctness. *Overstreet v. TRW Commercial Steering Div.,* 256 S.W.3d 626, 630 (Tenn.2008). Once an employment relationship is established, the employer bears the burden of proving that the worker was an independent contractor rather than an employee. *Galloway v. Memphis Drum Serv.,* 822 S.W.2d 584, 586 (Tenn.1991). Moreover, "it is our duty to give the act a liberal construction in favor of the fact that one is an employee rather than a strict construction holding him to be an independent contractor." *Wooten Transports, Inc. v. Hunter,* 535 S.W.2d 858, 860 (Tenn. 1976).

■ The trial court found that HFC did not establish by a preponderance of the evidence that Lindsey was an independent contractor. When determining whether a plaintiff is an employee or an independent contractor, a court may consider many factors: "(A) The right to control the conduct of the work; (B) The right of termination; (C) The method of payment; (D) The freedom to select and hire helpers; (E) The furnishings of tools and equipment; (F) Self scheduling of working hours; and (G) The freedom to offer services to other entities." Tenn.Code Ann. § 50–6–102(11) (2005); *see also Galloway,* 822 S.W.2d at 586 (quoting *Bargery v. Obion Grain Co.,* 785 S.W.2d 118, 119–20 (Tenn.1990)). These factors do not preclude an examination of the work relationship as a whole but are merely a means of analysis. *Masiers v. Arrow Transfer & Storage Co.,* 639 S.W.2d 654, 656 (Tenn. 1982).

■ While no one factor is "entirely indicative," this Court has recognized that the primary factor in determining the plaintiff's status is the right to control the conduct of the work. *Id.* This Court has held that "[t]he test is not whether the right to control was exercised but merely whether the right to control existed." *Stratton v. United Inter–Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn.1985); *Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218, 220 (Tenn.1985). A party may have some right to control the results of the work without creating an employer-employee relationship. *See id.; Wright v. Knox Vinyl & Aluminum Co.*, 779 S.W.2d 371, 374 (Tenn.1989).

The two HFC partners, Noah Houghtaling ("Houghtaling") and Chris Moore ("Moore"), testified that they hired Lindsey because they knew he was a "good splicer" whom they could use without having to supervise his work closely. Nonetheless, Moore did inspect Lindsey's work periodically and required him to re-splice on one or two occasions. Houghtaling testified that HFC exercised less control over Lindsey's work because Lindsey was an independent contractor. The trial court, however, found that the friendship among Houghtaling, Moore, and Lindsey, Lindsey's status as an experienced splicer, and the limited time available to complete the project combined to require only occasional inspection of Lindsey's work.

■ In addition to the right of control, the right of termination has taken on "controlling significance" in our case law. *Masiers*, 639 S.W.2d at 656. "The power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id.* Moore testified that HFC could "send [Lindsey] home for any reason," and the trial court explicitly accredited this testimony.

■ We review a trial court's findings of fact de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (2008). "When the trial judge has seen and heard a witness's testimony, considerable deference must be accorded on review to the trial court's findings of credibility and the weight given to that testimony." *Whirlpool Corp. v. Nakhoneinh*, 69 S.W.3d 164, 167 (Tenn.2002). We conclude that the evidence does not preponderate against the trial court's findings that: 1) the time-sensitive nature of the job and not Lindsey's alleged status as an independent contractor mandated his working conditions and the level of control exercised by HFC; and 2) HFC could terminate Lindsey's work relationship at any time and for any reason.

The trial court found that three of the statutory factors offered some indication that Lindsey was an independent contractor: the freedom to select and hire helpers, the self-scheduling of working hours, and the freedom to offer services to other entities. We agree with the trial court that the time-sensitive nature of the job and Lindsey's hours of employment diminish the importance of these factors and that these factors do not outweigh the evidence that Lindsey was an employee.

Finally, while Lindsey signed a form entitled "Joint Agreement to Affirm Independent Relationship for Certain Building and Construction Workers,"[3] this Court

---

**3.** The form to be filed with the Texas Workers' Compensation Commission "declare[d] that the Independent Contractor meets the qualifications of an Independent Contractor" under Texas law and that "the Independent Contractor is not an employee of the Hiring Contractor." HFC failed to file the form with the Texas Workers' Compensation Board. If

has held that a contract purporting to establish the plaintiff as an "independent contractor" is insufficient when the facts surrounding the arrangement indicate that the plaintiff is an employee. *See Boruff v. CNA Ins. Co.,* 795 S.W.2d 125, 126 (Tenn. 1990). In addition, HFC did not withhold taxes from Lindsey's paycheck. We have held that "the fact that neither social security nor withholding taxes were deducted is not in itself controlling." *Carver,* 690 S.W.2d at 221; *see also Wooten Transports, Inc.,* 535 S.W.2d at 860.

We therefore conclude that the evidence does not preponderate against the trial court's conclusion that HFC failed to carry its burden of proof to establish that Lindsey was an independent contractor.

### III. Trinity's Liability under Tennessee Code Annotated Section 50–6–113

■■■ Having affirmed the trial court's conclusion that Lindsey was an employee of HFC, we turn to the issue of whether Trinity was Lindsey's statutory employer under Tennessee Code Annotated section 50–6–113 (2005). Section 50–6–113(a) provides:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

the form had been filed, Lindsey would have been an independent contractor as a matter of Texas law. Tex. Lab.Code § 406.145(a) (2007).

**4.** Broadband does not dispute the trial court's finding that it is a statutory employer under section 50–6–113. Rather, Texas Mutual argues that Broadband's status as a statutory

The statute is intended to ensure that all workers will receive compensation when they are injured in the course of their employment. *Stratton,* 695 S.W.2d at 951. Section 50–6–113 extends liability from the employer that does not have workers' compensation insurance to an intermediate or principal contractor that does have coverage, which "prevents employers from contracting out normal work simply to avoid liability for workers' compensation." *Id.* In addition, this encourages employers to hire responsible, insured subcontractors. *Posey v. Union Carbide Corp.,* 705 F.2d 833, 835 (6th Cir.1983).

■■■ In this case, the trial court found that Lindsey could seek benefits under section 50–6–113 from Broadband [4] and Trinity as statutory employers because HFC Services had no workers' compensation insurance. The trial court specifically found that Trinity, as a cable company, was "in the business of gaining ... subscribers to their signal on their ... cable" and "a significant part of their business" was being able to provide customers "the signal into their home." The trial court therefore concluded that Trinity was a principal contractor because the work performed by Lindsey was "an integral part, a regular part, of the business of the cable industry or cable companies." We review the trial court's findings of fact de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (2008). We review questions of law de novo with no

employer under Tennessee law should not affect possible coverage under the policy because Texas law does not have a similar statutory employer law. Therefore, we need not determine whether the trial court erred by finding Broadband a statutory employer under Tennessee law.

presumption of correctness. *Overstreet*, 256 S.W.3d at 630.

■ Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) "the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees." *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 176 (Tenn.2001); *Stratton*, 695 S.W.2d at 951–52.

### A.

It is undisputed that Trinity did not undertake work for another entity, and thus the first test does not apply to this case. Trinity may be a principal contractor under section 50–6–113, however, if it retained a "right of control over the conduct of the work and over the employees of the subcontractor." *Id.* The trial court did not make findings of fact concerning whether Trinity was a principal contractor based on a right of control, and we therefore review this issue de novo with no presumption of correctness. *See Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826–27 (Tenn.2003).

■ After a de novo review of the evidence, we conclude that Trinity did not retain the "right of control over the conduct of the work" necessary to qualify as the principal contractor. *See Goodyear*, 46 S.W.3d at 176. We have held that a company was a principal contractor when it retained the right to control: (1) the sub-

contractor's employees to be used; (2) the manner in which the job was to be performed; and (3) the materials to be used. *Stratton*, 695 S.W.2d at 953; *see also Acklie v. Carrier*, 785 S.W.2d 355, 358 (Tenn. 1990) (holding that the company was a principal contractor because it "selected the subcontractors, coordinated the work, made changes periodically in the plans and had work redone, and its own employees performed a substantial part" of the work on the project).

Trinity did not control which employees worked on the job, when they worked, or how they worked. Further, Trinity had no knowledge that Broadband had subcontracted the splicing work to HFC until after Lindsey was injured. Trinity provided the material that Broadband and HFC installed on the cable lines and provided some guidance to Broadband and HFC on the design of the new system. Trinity provided no instruction, however, to Broadband or HFC regarding how to hang or splice the cable.

■ After the cable was hung and spliced, Trinity employees checked to make sure the materials were installed properly and tested the equipment and the signal to certify the lines were working properly. A party may have a right to control the results of the work without qualifying as a principal contractor.[5] *See Wright*, 779 S.W.2d at 374. In this case, Trinity's control over the results of the work merely ensured that Broadband met its obligations under the contract, and such control does not qualify Trinity as a principal contractor.

### B.

Trinity also argues that the contract work was not part of its regular business

---

5. This is similar to the analysis used to determine whether a worker is an employee or an independent contractor. Courts routinely have used similar control analyses in the principal contractor and independent contractor determinations. *See Wright*, 779 S.W.2d at 374; *Stratton*, 695 S.W.2d at 953.

and the work performed by Broadband and HFC differed from the work usually performed by Trinity. Trinity provides analog and digital video as well as high-speed internet and phone services. Trinity's franchise agreement grants Trinity "the right and authority to build, construct, equip, own, maintain ... such wires, lines, poles, cables, appenditures [sic], fixtures, and other apparatus as are reasonably necessary for the operation of said system...." Trinity currently operates only two cable systems, including the system for which Lindsey performed splicing work.

Although Trinity's President, James Hunter, admitted in his testimony that the new system construction was "at least a part" of Trinity's business, Trinity argues that it was not a *regular* part of its business. Hunter testified that Trinity "hired out" its new cable construction projects. For this project, Trinity prepared the maps for the site showing where the cable was to be hung and spliced, and Broadband was to "build the entire job." According to Hunter, Trinity's employees do not work on new system construction. At the time of its contract with Broadband, Trinity had only two employees, both of whom were inexperienced and incapable of handling the construction of a new system.

■ We conclude that the evidence preponderates against the trial court's finding that the work performed by Lindsey was a regular part of Trinity's business. Whether work is a regular part of the business of any entity is a fact-specific inquiry, relative to the size and scope of the business. Construction or repair that is routine activity for a large business, which normally expects to perform the work with its own employed staff, may be a nonrecurring and extraordinary undertaking for a small business. 4–70 *Larson's Workers' Compensation Law* § 70.06(3)

(2008). While new system construction may be a regular part of the business of "a cable company" in some instances, Trinity's small size and limited number of employees did not allow this type of work to be a regular part of its business. *See Goodyear*, 46 S.W.3d at 177 (holding that a painting job was not a regular part of the business because it was more extensive and specialized than a regular maintenance project).

■ Trinity may be a principal contractor, however, if the work performed by Broadband and HFC was "the same type of work usually performed by the company's employees." *Goodyear*, 46 S.W.3d at 176; *Stratton*, 695 S.W.2d at 951–52. The trial court did not make findings of fact concerning whether Trinity's employees performed the same type of work as Broadband and HFC, and we therefore review this issue de novo with no presumption of correctness. *See Perrin*, 120 S.W.3d at 826–27.

Pursuant to its contract with Trinity, Broadband hung galvanized steel strands for support along poles, to which it attached the coaxial and fiberoptic cables that take the cable signal from the main plant to various locations along the cable lines. After the cable was hung, HFC spliced in "taps," "splitters," and other devices. A "tap" is used to extract a signal from the main plant, through the coaxial cable, to be delivered to the customer's house. Hunter testified that if a tap had malfunctioned, Trinity would have contracted out the repair work to a "technician." At the time of trial, Trinity employed one technician, also called the "network manager," who could replace a malfunctioning tap by removing the tap from the cable and splicing a new tap in its place.

After the cable was hung by Broadband and spliced by HFC, a Trinity "installer"

went to the customer's home. At the time of the new system construction, Trinity employed only two installers. An installer determines a point of entry, often by using a customer's existing internal wiring, and hangs a "drop" from the tap to the ground wire at the customer's house to provide the signal.

■ A company who routinely contracts out more extensive repairs and maintenance projects and whose employees only occasionally perform "small maintenance tasks" is not a principal contractor. *Goodyear*, 46 S.W.3d at 176. In this case, Trinity's practice was to contract out new system construction. Hunter testified that at the time of Lindsey's injury, Trinity's employees were incapable of performing the same type of work as Broadband and HFC. At the time of trial, Trinity had one employee who only performed small maintenance tasks involving splicing to repair malfunctioning taps. Thus, we conclude that the work performed by Broadband and HFC was not the same type of work performed by Trinity's employees, and Trinity is not a principal contractor under this test.

Because Trinity did not retain a right of control over the project, did not perform new system construction as a regular part of its business, and did not have employees who routinely performed such construction, we conclude that Trinity is not a principal contractor under section 50–6–113.

### Conclusion

We conclude that the trial court erred in exercising personal jurisdiction over Texas Mutual. Thus, we need not consider the other issues raised by Texas Mutual. We also conclude that the trial court erred in finding Trinity liable as a statutory employer under section 50–6–113. We affirm the trial court's holding that Lindsey was an employee of HFC. Accordingly, the case is remanded to the trial court for dismissal of Texas Mutual, Trinity, and St. Paul Fire and Marine, and for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees, Richard Lindsey, HFC Services, and Broadband Specialists, Inc., for which execution may issue if necessary.