# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 12, 2012 Session

## FAYETTE JANITORIAL SERVICES and TECHNOLOGY INSURANCE COMPANY, AS ASSIGNEE OF THE CLAIMS OF WESLEY KENNEDY v. KELLOGG USA, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001571-10       Jerry Stokes, Judge**

---

**No. W2011-01759-COA-R3-CV - Filed February 4, 2013**

---

This appeal involves a tort suit filed after a workplace injury. The defendant filed a motion for summary judgment, contending that it was a statutory employer within the meaning of the Workers' Compensation Law, Tenn. Code Ann. § 50-6-113, and therefore, it was immune from the tort claim asserted on behalf of the injured worker. The trial court granted the defendant's motion for summary judgment. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Benjamin F. Gallagher, St. Paul, MN; Brian L. Yoakum, Memphis, Tennessee, for the appellants, Fayette Janitorial Services and Technology Insurance Company, as Assignee of the Claims of Wesley Kennedy

R. Scott McCullough, Richard Sorin, Memphis, Tennessee, for the appellee, Kellogg USA, Inc.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Kellogg USA, Inc. ("Kellogg") is engaged in the business of manufacturing and distributing cereals and snacks.  Kellogg operates a manufacturing plant in Memphis, Tennessee.  For at least the last twenty years, Kellogg has followed a specific cleaning and maintenance cycle in which the plant is shutdown approximately every 28 days for extensive cleaning and sanitation.  Each cleaning cycle lasts approximately 16 to 24 hours, and during that time, each piece of equipment on the production line, and the building areas surrounding the production line, are thoroughly cleaned.

The aforementioned cleaning cycles were performed entirely by Kellogg employees until April of 2003, when Kellogg and Fayette Janitorial Services ("Fayette") contractually agreed that Fayette would begin performing the cleaning and sanitation required during the 28-day cleaning cycles.  On September 27, 2008, one of Fayette's employees, Wesley Kennedy, was severely burned by chemicals while cleaning one of the fifteen corn cookers at the Kellogg plant.  Technology Insurance Company ("Insurer") paid $262,979.13 in workers' compensation benefits to Mr. Kennedy, on behalf of Fayette.

Fayette and Insurer, acting "as assignee of the claims of Wesley Kennedy," then filed a complaint against Kellogg, asserting a cause of action for negligence, and basically claiming that Kellogg had breached a duty to Mr. Kennedy by maintaining a defective corn cooker.  Kellogg filed an answer, and discovery ensued.

Kellogg subsequently filed a motion for summary judgment, arguing that it was a "statutory employer" of Mr. Kennedy pursuant to Tennessee Code Annotated section 50-6-113, and therefore, his exclusive remedy was under Tennessee's Workers' Compensation Law, and Kellogg was immune from suit in tort.  In support of its motion, Kellogg submitted affidavits that detailed the nature of its plant's operations and the role played by Fayette in Kellogg's business.  Kellogg also submitted the service contract entered into between Kellogg and Fayette, which was in effect on the date of the accident.  Plaintiffs filed a response along with an additional affidavit.

Following a hearing, the trial court entered an order granting Kellogg's motion for summary judgment on the basis that Kellogg was the statutory employer of Mr. Kennedy, and therefore, Kellogg was immune from the tort claim asserted by Plaintiffs.  Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

The issues presented by Plaintiffs on appeal, are, as we perceive them:

1.  Whether Kellogg can be deemed a statutory employer when the service contract provided that Fayette was an independent contractor; and
2.  Whether the trial court erred in its finding that the work performed by Fayette was part of Kellogg's regular business and the same type of work usually performed by Kellogg's employees, and therefore concluding that Kellogg was a statutory employer of Mr. Kennedy.

For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009).

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green*, 293 S.W.3d at 513 (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin*, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). The nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Id.* However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

"Under the Tennessee Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from the *employer*." *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001) (emphasis added). However, for injuries sustained by employees of subcontractors, our legislature has extended workers' compensation liability to principal contractors under certain circumstances. *Id.* Tennessee Code Annotated section 50-6-113(a) provides:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.[1]

---

[1] We note that "[t]his section applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or that are otherwise under the
(continued...)

A worker must first present a claim for compensation against his or her immediate employer, and the collection of full compensation from the immediate employer will bar recovery by the worker against a principal contractor. Tenn. Code Ann. § 50-6-113(c). In other words, the principal contractor "is secondarily liable for workers' compensation, and thus pays workers' compensation only if the immediate employer cannot do so." Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 429 (1988). Still, due to section 50-6-113, the principal contractor can be held responsible for workers' compensation benefits "if lower level employers or subcontractors do not carry the required insurance." *CNA (Continental Cas.) v. King*, No. M2004-02911-COA-R3-CV, 2006 WL 2792159, at *4 (Tenn. Ct. App. Sept. 28, 2006).

The extension of workers' compensation liability to principal contractors under section 50-6-113 applies "regardless of whether [the principal contractor's] subcontractors are independent contractors." *Murray*, 46 S.W.3d at 175; *see also* ***Hendrix v. Ray-Ser Dyeing Co.***, 224 Tenn. 690, 694, 462 S.W.2d 483, 484 (Tenn. 1970); ***Harness v. Bechtel Jacobs Co., LLC***, No. E2006-00194-COA-R3-CV, 2007 WL 10447, at *3 (Tenn. Ct. App. Jan. 3, 2007). A principal contractor "may be held liable for injuries sustained by employees of his subcontractors, even when those subcontractors are deemed to be independent contractors." ***CNA (Continental Cas.)***, 2006 WL 2792159, at *4. The statute clearly expands the responsibility for workers' compensation benefits "beyond the traditional employer-employee relationship." ***Stratton v. United Inter-Mountain Telephone Co.***, 695 S.W.2d 947, 950 (Tenn. 1985). It "essentially creates 'statutory employers' when injured workers are otherwise unable to recover workers' compensation benefits from their immediate employers."[2] ***Bostic v. Dalton***, 158 S.W.3d 347, 350 (Tenn. 2005) (citing *Murray*, 46 S.W.3d at 175).

The statutory employer rule set forth in section 50-6-113 "is intended to ensure that all workers will receive compensation when they are injured in the course of their employment." ***Lindsey v. Trinity Commc'ns, Inc.*** 275 S.W.3d 411, 420 (Tenn. 2009) (citing *Stratton*, 695 S.W.2d at 951). By extending liability from the employer that does not have workers' compensation insurance to an intermediate or principal contractor that does have

---

[1](...continued)
principal contractor's control or management." Tenn. Code Ann. § 50-6-113(d). It is undisputed that Mr. Kennedy's injury occurred on Kellogg's premises, and while he was engaged in the work covered by the service contract between Kellogg and Fayette.

[2] As noted by Professor Larson, roughly four-fifths of the states have some type of statute imposing compensation liability on the general employer for the employees of contractors under it. 4-70, *Larson's Workers' Compensation Law*, § 70.01 (2008). "It has become quite common to speak of the general contractor's liability as that of the 'statutory employer' to a 'statutory employee.'" *Id.* at § 70.03.

coverage, the statute "'prevents employers from contracting out normal work simply to avoid liability for workers' compensation.'" *Id.* (quoting *Stratton*, 695 S.W.2d at 951). The statute also encourages employers to hire responsible, insured subcontractors. *Id.* (citing *Posey v. Union Carbide Corp.*, 705 F.2d 833, 835 (6th Cir. 1983)). "It operates by passing along to upstream contractors the responsibility either to require their intermediate contractors or subcontractors to provide workers' compensation coverage to their own employees or to be responsible for the coverage themselves." *Williams v. Premapak Corp.*, No. 01-A-01-9307-CV-00326, 1995 WL 50068, at *2 (Tenn. Ct. App. M.S. Feb. 8, 1995) (citing *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 136 (Tenn. 1992); *Acklie v. Carrier*, 785 S.W.2d 355, 357 (Tenn. 1990); *Stratton*, 695 S.W.2d at 951; *Clendening v. London Assurance Co.*, 206 Tenn. 601, 609, 336 S.W.2d 535, 537-38 (1960)).

In exchange for the principal contractor's exposure to liability under the Workers' Compensation Law, the principal contractor receives immunity from suit in tort. *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 148 (Tenn. 2007); *Campbell v. Dick Broadcasting Co., Inc. of Tennessee*, 883 S.W.2d 604, 606 (Tenn. 1994). Tennessee's Workers' Compensation Law contains an exclusive remedy provision which provides that "[t]he rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of the injury or death." Tenn. Code Ann. § 50-6-108. As such, "statutory employers may use the exclusive remedy provisions of Tenn. Code Ann. § 50-6-108(a) [] to defeat negligence actions brought against them by the same employees for whom they would have been required to provide workers' compensation coverage."[3]

---

[3] Tennessee Code Annotated section 50-6-112 provides that when a worker's injury or death, for which workers' compensation is payable, "was caused under circumstances creating a legal liability against *some person other than the employer* to pay damages, the injured worker . . . shall have the right to take compensation under this chapter, *and* the injured worker . . . may pursue the injured worker's [] remedy by proper action in a court of competent jurisdiction against the other person." (emphasis added). Simply put, this statute "saves an employee's tort cause of action for damages against 'some person other than the employer.'" *Campbell*, 883 S.W.2d at 606. "The policy for allowing suit against a responsible third party is that 'since the third party could not have been liable for workers' compensation, he should be prepared to make the injured person whole under normal tort principles.'" *Id.* (quoting *Posey v. Union Carbide Corp.*, 705 F.2d 833, 834 (6th Cir. 1983)).

The complaint filed by Plaintiffs on behalf of Mr. Kennedy stated that the Plaintiffs were asserting Mr. Kennedy's right to institute an action pursuant to section 50-6-112. However, this statute authorizes suits against persons "other than the employer," and in this context, "'employer' refers to any party who may be liable for workers' compensation benefits pursuant to T.C.A. § 50-6-113(a)." *Campbell*, 883 S.W.2d at 606. "Principal or intermediate contractors are not viewed as third parties for purposes of tort liability because they may be held liable for workers' compensation benefits." *Id.* Therefore, if Kellogg is deemed a principal contractor and statutory employer of Mr. Kennedy, it is immune from the tort action purportedly

(continued...)

*Williams*, 1995 WL 50068, at *2 (citing *Campbell*, 883 S.W.2d at 606).

The statutory employer's immunity from tort suits applies even in situations in which the statutory employer was not in fact required to pay workers' compensation benefits to the worker. *See Mouser v. Buckhead Constr. Co.*, No. E2005-00967-COA-R3-CV, 2006 WL 1763679, at *4 (Tenn. Ct. App. Jun. 28, 2006) ("The fact that the Employee pursued a workers' compensation claim against his employer and its insurer and not against the Principal Contractor is immaterial; it only matters that the Employee had the right to recover workers' compensation benefits from the Principal Contractor under the statute. This *potential* liability entitled the Principal Contractor to the protection of the exclusive remedy rule and shields it from tort liability.") (emphasis added). As one commentator explained:

> Tennessee courts have held that the exclusive remedy rule protects statutory employers from tort claims by employees of their subcontractors for injuries covered by the Tennessee workers' compensation act, even if the immediate employer pays the entire workers' compensation claim. Thus, the status as statutory employer under section 50-6-113 will often give the statutory employer the best of both worlds. The statutory employer will usually not have to pay compensation, especially if it insists that its subcontractors be adequately insured. And, in any event, the statutory employer is usually protected by the exclusive remedy rule from tort claims by employees of his subcontractors.

King, 55 Tenn. L. Rev. at 429-30 (footnote omitted).

Despite the important purposes served by the statutory employer statute, such a rule is "not intended to make a contractee liable to the injured employees of everyone with whom he or she has some sort of contractual relations." 99 C.J.S. *Workers' Compensation* § 215. In Tennessee, a court will find that a company is a principal contractor or statutory employer within the meaning of Tennessee Code Annotated section 50-6-113 only if it satisfies one of three tests. *Griffith v. Jellico Community Hosp., Inc.*, No. E2009-01431-COA-R3-CV, 2010 WL 2160775, at *3 (Tenn. Ct. App. May 28, 2010). As stated by our Supreme Court,

> Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) 'the work being performed by a subcontractor's employees

---

[3](...continued)
filed on Mr. Kennedy's behalf pursuant to section 50-6-112.

> is part of the regular business of the company or is the same type of work usually performed by the company's employees.'

*Lindsey*, 275 S.W.3d at 421 (quoting *Murray*, 46 S.W.3d at 176). In the case before us, it is undisputed that the first two tests are inapplicable. Therefore, we will limit our discussion to the third criterion, i.e., whether the work being performed by Fayette's employees was part of Kellogg's regular business or the same type of work usually performed by Kellogg's employees. However, we will first address Plaintiffs' contention that it cannot be considered a statutory employer in any event because the service contract between Kellogg and Fayette stated that Fayette was an independent contractor.

## A.    Effect of the Service Contract

The contract between Kellogg and Fayette contained a provision stating that Fayette and its employees would be deemed independent contractors and not employees of Kellogg. Thus, Plaintiffs claim that no employment relationship can be deemed to exist in this case, and Kellogg cannot be considered a statutory employer of Mr. Kennedy. We disagree.

We first note that the designation given by the parties in their contract does not dictate the applicability of the Workers' Compensation Law. Our Supreme Court has stated that "a contract purporting to establish the plaintiff as an 'independent contractor' is insufficient when the facts surrounding the arrangement indicate [otherwise]." *Lindsey*, 275 S.W.3d at 419-20. Such a provision is not dispositive "because it is intended to insulate defendant from worker's compensation liability." *Barber v. Ralston Purina*, 825 S.W.2d 96, 100 (Tenn. Ct. App. 1991) (citing *Stratton*, 695 S.W.2d at 953). Tennessee Code Annotated section 50-6-114(a) provides that "[n]o contract or agreement, written or implied . . . shall in any manner operate to relieve any employer, in whole or in part, of any obligation created by this chapter[.]"[4]  Therefore, "provisions in contracts between the parties do not control on the question of whether the workers comp statute applies." *Harness*, 2007 WL 10447, at *3.

Furthermore, as explained above, the extension of liability to principal contractors under section 50-6-113 applies "regardless of whether [the principal contractors'] subcontractors are independent contractors." *Murray*, 46 S.W.3d at 175. The statute expands the responsibility for workers' compensation benefits "beyond the traditional employer-employee relationship," *Stratton*, 695 S.W.2d at 951, to allow employees of subcontractors to recover from a party other than their immediate employer. The "'injured workman need not be an employee of the principal contractor; it is enough if he was an

---

[4]  Subsection (b) of the statute contains one exception not relevant here. Tenn. Code Ann. § 50-6-114(b).

employee of any subcontractor on the project.'" *Id.* at 951-52 (citing *Clendening*, 336 S.W.2d at 538). The statute effectively permits a worker who could otherwise be classified as an independent contractor of the principal contractor, under other tests for employment, to be deemed a "statutory" employee in order to recover workers' compensation. "Correctly understood, the statutory employer rule represents an exception to the rule that independent contractors are not covered by the workers' compensation act." King, 55 Tenn. L. Rev. at 430. The subcontractor who directly employs the worker "may very well be (and often is) an independent contractor and may still be a party to a relationship with a § 50-6-113 statutory employer." *Id.* at 430 n.110. "Indeed, the whole purpose of the § 50-6-113 rule is to identify general, intermediate, and superior subcontractors who are potentially liable for workers' compensation for injuries to the employees of their subcontractors who are independent contractors. If those latter subcontractors are employees of the superior contractor-defendant, there is no need to even invoke § 50-6-113." *Id.*

For these reasons, we find that the "independent contractor" language used in the parties' service contract does not preclude Kellogg from being deemed a statutory employer.

### B. Classification as a Statutory Employer

We now turn to the issue of whether Kellogg is considered a statutory employer of Mr. Kennedy within the meaning of Tennessee Code Annotated section 50-6-113. Under the third test mentioned above, which is the one relevant to this appeal, "[a] company or other business is considered a principal contractor if the work being performed by a subcontractor's employees is part of the regular business of the company *or* is the same type of work usually performed by the company's employees." *Murray*, 46 S.W.3d at 176 (emphasis added). As we noted above, the statutory employer provision is aimed to prevent employers "from contracting out ordinary business activities in an effort to avoid workers' compensation liability." *Bostic*, 158 S.W.3d at 350. It "prevent[s] employers from relieving themselves of liability by doing through others what they would otherwise do through direct employees." *Tayloe Paper Co. v. W. F. Jameson Const. Co.*, 211 Tenn. 232, 235, 364 S.W.2d 882, 884 (Tenn. 1963)). Therefore, "statutory employers" are "those who get part of their regular work done by the employees of a subcontractor and are held responsible for work-related injuries sustained by those employees, if the subcontractor is uninsured." *Brown*, 844 S.W.2d at 136 (citing Larson, *Workmen's Compensation*, § 49.14 (1991)).

On appeal, Plaintiffs argue that the cleaning work being performed by Mr. Kennedy was not "part of the regular business of the company" because Kellogg is in the business of manufacturing cereals, not cleaning or sanitation. Plaintiffs claim that the phrase "regular business" refers only to the nature of the contractor's business, not the frequency of the work performed. They contend that the 28-day cleaning cycles were performed while the "regular

business" in the Kellogg plant was shut down. We find that the Plaintiffs' narrow interpretation of "regular business" is not supported by Tennessee caselaw. A brief review of some Tennessee cases will best demonstrate our point.

"Whether work is a regular part of the business of any entity is a fact-specific inquiry, relative to the size and scope of the business." *Lindsey*, 275 S.W.3d at 422. In *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 173 (Tenn. 2001), Goodyear undertook an extensive project of cleaning and painting the overhead air ducts, located about twenty feet above the ground, at its tire plant. Goodyear employees occasionally performed minor maintenance tasks, including some painting, but this was a specialized project for which Goodyear lacked the employees, materials, and equipment necessary to complete the job. Consequently, Goodyear hired a professional painter to paint the overhead air ducts. After the painter was injured, the Supreme Court was faced with the issue of whether Goodyear was the painter's statutory employer, and more specifically, whether he was engaged in work that was a regular part of Goodyear's business. *Id.* at 174-75. "Undoubtedly," the Court explained, "regular maintenance, repair, painting, and cleaning are an 'expectable, routine and inherent part of carrying on any enterprise.'" *Id.* at 176 (quoting *Smith v. Lincoln Mem'l Univ.*, 202 Tenn. 238, 304 S.W.2d 70, 74 (1957)). However, the painting of the overhead air ducts was found to be more extensive and specialized than a regular maintenance project, and the Court found no indication that this was "the type of project that need[ed] to be done on a continual basis." *Id.* This was "a project that was not part of the regular business of the company." *Id.* at 177. In sum, the Court concluded, "the evidence preponderate[d] against the trial court's finding that Goodyear was a principal contractor under section 50-6-113 and was therefore a statutory employer who [was] liable for workers' compensation benefits." *Id.*

In *Lindsey v. Trinity Communications, Inc.*, 275 S.W.3d 411, 415 (Tenn. 2009), a small cable and internet service provider, with only two employees, contracted with a Texas corporation for it to install a new cable system for the cable provider. An employee of a subcontractor on the project was injured while splicing cable and sought to recover from the cable company as a statutory employer. The Supreme Court ultimately concluded that the new cable system construction project was not part of the *regular* business of the cable company. *Id.* at 422. The cable company operated only two cable systems, including the system for which the injured worker performed splicing work. In addition, the cable company's two employees were incapable of handling the construction of a new system. The Court explained its decision as follows:

> We conclude that the evidence preponderates against the trial court's finding that the work performed by Lindsey was a regular part of Trinity's business. Whether work is a regular part of the business of any entity is a

-10-

fact-specific inquiry, relative to the size and scope of the business. Construction or repair that is routine activity for a large business, which normally expects to perform the work with its own employed staff, may be a nonrecurring and extraordinary undertaking for a small business. 4–70 *Larson's Workers' Compensation Law* § 70.06(3) (2008). While new system construction may be a regular part of the business of "a cable company" in some instances, Trinity's small size and limited number of employees did not allow this type of work to be a regular part of its business. See *Goodyear*, 46 S.W.3d at 177 (holding that a painting job was not a regular part of the business because it was more extensive and specialized than a regular maintenance project).

*Id.* In sum, new system construction was not a regular part of the cable company's business, and it was not the statutory employer of the injured worker. *Id.* at 423.

The Court of Appeals has considered the "statutory employer" issue in a case quite similar to the case at bar. In **Randolph v. Eastman Chemical Co.**, 180 S.W.3d 552, 554-55 (Tenn. Ct. App. 2005), a manufacturer of chemicals, plastics, and fibers routinely shutdown its plant for a twenty-day period once every two years for cleaning, inspections, and any necessary repairs. The shutdown cycle had been taking place regularly since the plant's inception in about 1980. The manufacturer did not have the technology to conduct electromagnetic testing on its heat exchangers, so it hired an outside contractor that had the appropriate proprietary equipment to conduct the testing during the shutdowns. An engineer who was employed by the outside contractor was injured while boarding an elevator at the manufacturing plant, and the Court considered whether the work being performed was part of the regular business of the manufacturer in order to determine whether the manufacturer was a statutory employer. *Id.* at 556-57. The Court found it appropriate to "look at the entire picture" and to view the shutdown "as one large project." *Id.* at 558, 560. The Court found that, "[u]nlike the painting of the duct work in *Goodyear*, the evidence in the present case demonstrates that the work performed during a shutdown must be done on a continual basis, i.e., every two years, in order for the plant to operate properly, effectively, and in compliance with applicable safety regulations." *Id.* at 558. Due to the nature of the products being manufactured, the continual shutdown cycle was of vital importance to the business. The Court concluded, "It necessarily follows that the work activities taking place during the shutdown are part of [the manufacturer's] regular business because they are what [it] does on a regular basis as a necessary part of its ongoing business operation and, without them, there likely would be no business."[5] *Id.* at 560.

---

[5] In the case before us, Plaintiffs argued that we should focus on the particular task being performed

(continued...)

-11-

In the case at bar, Kellogg submitted, in support of its motion for summary judgment, an affidavit from its Operations Specialist, who explained various details regarding the company's cleaning procedure at the Memphis plant. He stated that Kellogg has followed the same 28-day cleaning cycle for at least the last twenty years. The plant is shutdown for approximately 16 to 24 hours, and during that time, each piece of equipment on the production line, and the building areas surrounding the production line, are thoroughly cleaned. The Operations Specialist stated that regular sanitation and cleaning of the plant's food production line was essential to Kellogg's ability to produce safe, high-quality food products and necessary for the plant to operate properly, effectively, and in compliance with applicable safety regulations. Kellogg also produced the service contract between it and Fayette, which described the work to be performed by Fayette in great detail.

The facts presented by Kellogg demonstrated that the work performed during the cleaning cycle was done on a regular and continual basis, and it was of vital importance to Kellogg's ongoing business operation. We conclude that Kellogg properly supported its motion for summary judgment with "evidence that tend[ed] to disprove an essential factual claim made by the nonmoving party," and therefore, Kellogg affirmatively negated an essential element of Plaintiffs' claim and shifted the burden of production to Plaintiffs. *See Martin*, 271 S.W.3d at 83-84. In response to Kellogg's motion for summary judgment, Plaintiffs submitted an affidavit from an insurance claims representative, who recounted facts she had learned about Mr. Kennedy's accident, but which basically failed to address the issue of whether the work being performed was part of Kellogg's regular business. In their memorandum of law, Plaintiffs argued that the nature of Kellogg's "regular business" was manufacturing and distributing cereal, not sanitation and cleaning, and therefore Fayette was not performing work that was part of Kellogg's regular business. Plaintiffs compared the 28-day cleaning cycle to a "specialized project" like the duct painting at issue in *Murray*. Plaintiffs also pointed out that although the Operations Specialist stated that Kellogg's cleaning and sanitation procedures were necessary for the plant to operate, Kellogg had not

---

[5](...continued)
by Mr. Kennedy when he was injured (cleaning the corn cooker), and determine whether that particular task is part of Kellogg's regular business, rather than considering whether the 28-day cleaning cycle was part of Kellogg's regular business. They claim that cleaning the corn cooker was not part of the regular business of Kellogg because that task had been "subcontracted out." We find no support for Plaintiffs' position that we should exclusively focus on one particular duty rather than the entirety of the circumstances. *See Lindsey*, 275 S.W.3d at 422 ("Whether work is a regular part of the business of any entity is a fact-specific inquiry, relative to the size and scope of the business."); *Randolph*, 180 S.W.3d at 558 (considering the "entire picture" and viewing the shutdown "as one large project"); *Shires v. King*, No. 2:05-CV-84, 2007 WL 784350, at *3 (E.D. Tenn. Mar. 13, 2007) (rejecting the worker's attempt to oversimplify the regular business of Bristol Motor Speedway to simply motor racing, and holding that a contractor who provided food service in the luxury suites was performing a service that was part of the regular business of the Speedway).

produced any type of written regulation requiring the specific shutdown cycle at issue.

We find that Plaintiffs' response to the motion for summary judgment failed to establish that genuine issues of material fact existed. In response to a properly supported motion for summary judgment, "[t]he nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin*, 271 S.W.3d at 84. Plaintiffs did none of these. The facts remained undisputed, and they established that the cleaning and sanitation work performed by Fayette for Kellogg was a part of Kellogg's regular business, as it was an integral part of Kellogg's business that was performed on a continual and recurring basis. This was a routine maintenance program that was part of Kellogg's ongoing business operation, not an irregular specialized project.

Plaintiffs argue on appeal that Kellogg's own employees do not participate in the cleaning cycles, and therefore, Kellogg's "regular business," or regular practice, is to subcontract out the portion of its business relating to cleaning and sanitation. As noted above, the cleaning cycles were performed entirely by Kellogg employees until April of 2003, when Fayette began performing the cleaning and sanitation required during the cleaning cycles. Since Fayette's involvement, the role of Kellogg's employees has greatly diminished.[6] However, under the "regular business" prong of the statutory employer analysis, it is not essential to have Kellogg employees working alongside Fayette employees doing the same work. A company is considered a statutory employer if "the work being performed by a subcontractor's employees is part of the regular business of the company *or* is the same type of work usually performed by the company's employees." *Lindsey*, 275 S.W.3d at 421 (emphasis added). A company may be deemed a statutory employer under one prong of the test even if it does not meet the other. *See id.* (considering the issues separately); *Randolph*, 180 S.W.3d at 561 n.4 ("We note that *Goodyear* only requires [the manufacturer] to establish either that 'the work being performed by a subcontractor's employees is part of the regular business of the company *or* is the same type of work usually performed by the company's employees.'") (emphasis in original). For example, in the

_____

[6] According to the affidavit of the Operations Specialist, Kellogg employees remain present at all times during a cleaning cycle, and Kellogg employees normally clean the first floor of the packing room during that time. Additionally, Kellogg maintenance employees continue to work throughout the plant during a shutdown. Kellogg employees inspect the work performed by Fayette before production resumes, and if Fayette discovers a problem with a piece of equipment during the cleaning cycle, the problem is reported to Kellogg, and Kellogg employees perform the repairs.

*Randolph* case, which involved the engineer who performed electromagnetic testing at the chemical plant, the Court found that such testing was part of the regular business of the chemical company, giving rise to statutory employer status, even though the statutory employer did not possess the technology for its own employees to perform such testing. 180 S.W.3d at 560. In *Rucker v. Rockwood Elec. Utilities*, No. 03S01-9511-CH-00127, 1996 WL 626292, at *4 (Tenn. Oct. 30, 1996), an electric utility contracted with a tree cutting service for the removal of trees along its utility lines, and when one of the workers was injured by a saw, the electric utility was found to be his statutory employer, *despite* evidence that the utility company's employees did not perform such work, because the work was a vital function of the utility company's principal business. *Id.* at *4.

In *Griffith v. Jellico Community Hosp., Inc.*, No. E2009-01431-COA-R3-CV, 2010 WL 2160775, at *1 (Tenn. Ct. App. May 28, 2010) *perm. app. denied* (Tenn. Oct. 20, 2010), the Court rejected the same argument asserted by Plaintiffs in the case before us. A hospital had hired a company to service and maintain some 700 pieces of medical equipment in the hospital, and the company provided a biomedical equipment technician who worked at the hospital on a daily and continuous basis. When the technician was injured and filed a negligence suit against the hospital, the hospital contended that it was the statutory employer of the technician. In response, the technician and his direct employer argued that the hospital could not be deemed a statutory employer because the hospital did not have employees that performed the same type of work as the technician. *Id.* at *5. At the very least, they argued, there was a genuine issue of material fact regarding whether the maintenance services provided by the technician constituted the regular business of the hospital. The Court of Appeals disagreed. The Court found that the technician's work was part of the "regular business" of the hospital "[b]ecause the proper and safe operation of the equipment [was] essential to [the hospital's] business of providing health care." *Id.* at *7. The Court compared the facts before it to the electromagnetic testing performed by the engineer at the chemical plant in *Randolph*, and it explained that "the continual nature of the work performed by the subcontractor's employee" was "[k]ey to the reasoning in *Randolph*." *Id.* The Court found that the worker's interpretation of "regular business" was incorrect because it "ignore[d] the continual nature of the services provided" and failed to account for the connection between the equipment maintenance work and the statutory employer's "basic functions as a general hospital." *Id.* at *8. The Court concluded that the hospital had shown without factual controversy that it was the statutory employer of the technician, as the undisputed facts established the essential and regular nature of the technician's work to the hospital's operation. *Id.* at *8-9. Therefore, summary judgment was appropriately granted to the hospital. *See also Erwin v. Methodist Medical Center of Oak Ridge*, No. 03A01-9811-CV-00379, 1999 WL 907557, at *5 (Tenn. Ct. App. E.S. Oct. 18, 1999) (finding that a hospital was a statutory employer of the employee of a contractor that provided pharmacy service at the hospital, even though the contractor was the exclusive provider of such service,

because the pharmacy service was part of the regular business of the hospital in providing healthcare services); ***Lambert v. Tennessee Valley Authority***, No. 1:01-CV-330, 2002 WL 32059747, at \*5 (E.D. Tenn. Sept. 17, 2002) ("TVA may be a principal contractor in the regular business of performing a particular task . . . without necessarily having TVA employees do the manual labor.")[7]

Considering the holdings of these previous cases, we likewise conclude that Kellogg can be deemed a statutory employer of Mr. Kennedy even though Kellogg has not utilized its own employees to clean the corn cookers since 2003. "Obviously, an entity may be in the business of performing a particular task without necessarily having regular employees do it." ***Brown***, 844 S.W.2d at 138. The statutory employer rule is designed to prevent employers from contracting out normal work, or "doing through others what they would otherwise do through direct employees," ***Tayloe Paper Co.***, 364 S.W.2d at 884, in an effort to avoid workers' compensation liability. The regular cleaning work previously completed by Kellogg's own employees, and now performed by Fayette, was precisely the type of "regular business" activity that the statutory employer rule was meant to encompass. Under Plaintiffs' theory, a company could avoid statutory employer status, and workers' compensation liability, by delegating its regular work to subcontractors if it simply ensured that none of its own employees performed the same type of work. We reject such an interpretation.

---

[7] The ***Lambert*** case, although not binding on this Court, has been discussed and cited with approval in other Tennessee cases. *See* ***Griffith***, 2010 WL 2160775, at \*8 (finding the ***Lambert*** case "instructive"); ***Randolph***, 180 S.W.3d at 560 (stating that the Court "agree[d] with the reasoning of" ***Lambert***).

### III. CONCLUSION

The undisputed facts presented by Kellogg demonstrate that the work being performed by Fayette, and Mr. Kennedy, was a regular part of Kellogg's business. No genuine issues of material fact existed regarding this issue. Therefore, Kellogg is a statutory employer and principal contractor within the meaning of Tennessee Code Annotated section 50-6-113, and Kellogg is immune from the tort suit filed by Plaintiffs "as assignee of the claims of Wesley Kennedy." We affirm the trial court's order granting summary judgment to Kellogg. Costs of this appeal are taxed to the appellants, Fayette Janitorial Services and Technology Insurance Company, and their surety, for which execution may issue if necessary.

ALAN E. HIGHERS, P.J., W.S.