**FILED**

**May 22, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:39 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| **Monica Kleeberg,** | ) | **Docket No.: 2015-01-0134** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Profit Lines Services; Russell** | ) | **State File Nos.: 44486-2015 (Profit** |
| **Floersheim, d/b/a United Resource** | ) | **Line Services); 71837-2015 (Russell** |
| **Group; Environmental Solutions** | ) | **Floersheim/United Resource Group);** |
| **Systems; and Embassy Suites by** | ) | **72298-2015 (Environmental Solutions** |
| **Hilton-Chattanooga Hamilton** | ) | **Systems); 71834-2015 (Embassy** |
| **Place/Certistaff, Inc.** | ) | **Suites/Certistaff)** |
| **Named Employers,** | ) | |
| **and** | ) | |
| **Bridgefield Casualty,** | ) | **Judge Thomas Wyatt** |
| **Carrier** | ) | |
| | ) | |
| | ) | |

---

## COMPENSATION HEARING ORDER FOR MEDICAL AND PERMANENT PARTIAL DISABILITY BENEFITS

---

This claim came before the undersigned Workers' Compensation Judge on May 2, 2017, for a Compensation Hearing. The central issues raised by the parties were:

(1)    whether Monica Kleeberg was an independent contractor;

(2)    whether Ms. Kleeberg established that her injury arose primarily out of and in the course and scope of employment;

(3)    the benefits, if any, to which Ms. Kleeberg is entitled; and

(4)    whether Embassy Suites by Hilton-Chattanooga Hamilton Place/Certistaff (Embassy) and Environmental Solutions Systems, Inc. (Environmental) are statutory employers.

For the reasons set forth below, the Court awards Ms. Kleeberg medical and permanent partial disability benefits. The Court also holds that Embassy and

1

Environmental are liable as statutory employers.

## History of Claim

Ms. Kleeberg is a Spanish-speaking, fifty-three year old Peruvian national residing legally in Ooltewah, Hamilton County, Tennessee. In April and May 2015, she worked as a housekeeper at Embassy's hotel near Chattanooga and injured her left wrist on May 9, 2015, when she fell while performing housekeeping duties on Embassy's premises.

Despite timely notice, Ms. Kleeberg's supervisors did not authorize treatment, causing her to file a Petition for Benefit Determination (PBD) against Profit Line Services, Inc., the entity from which she received her paycheck. Ms. Kleeberg proceeded to an Expedited Hearing against Profit Line, which did not respond nor participate.[1] Later, Ms. Kleeberg filed separate PBDs against Embassy, Environmental and United Resource Group, which the Court consolidated for trial purposes with the PBD filed against Profit Line.

Ms. Kleeberg's employment at Embassy's hotel occurred under a complicated web of contractual arrangements. On May 14, 2014, Embassy entered into a Service Agreement with an entity identified in the contract as "Environmental Solutions Systems, Inc./United Resource Group[2]/Profit Line Services, Inc.", or, collectively, as "ESS." (Ex. 14.) The agreement obligated the ESS entities to provide "for the provision of certain services at [Embassy's] place of business for housekeeping, laundry, house person, bell person, or other such jobs or tasks as agreed upon." (Ex. 14 at 1.) It prohibited ESS from performing "any portion of this contract with agents or subcontractors without the advance written permission of [Embassy][3]" and required them to obtain workers' compensation insurance covering the workers provided. *Id.* at 9-10.

Mr. Parr, president of Environmental, offered the following explanation of the payment process under the agreement with Embassy: Embassy documented the hours the staff worked and, periodically, reported those hours to a billing agent. The billing agent then sent Embassy an invoice from "ESS, Inc." for payment based on an agreed hourly rate. (Ex. 10 at 24.) Embassy would pay ESS, Inc. by check after it received the invoice. *Id.* 24-25.

Mr. Parr testified that Environmental's only function in the contractual arrangement was to market United's and Profit Line's services to Embassy. (Ex. 10 at 14-

---

[1] Profit Line did not participate in any proceeding in this action, either through an attorney or carrier.

[2] The Court previously entered summary judgment dismissing United from the claim.

[3] Despite this provision, Environmental's president, William Parr, testified the ESS entities intended to staff the positions designated in the Service Agreement with independent contractors. The evidence introduced during the hearing failed to establish that Embassy gave written permission for ESS to utilize contractors as staff.

15.) He stated the Service Agreement obligated United to perform safety inspections[4], and Profit Line to hire, train and manage the workers provided under the agreement. *Id.* at 6, 16, 30. Mr. Parr asserted Environmental had sub-contractor relationships with United and Profit Line giving him authority to bind them to the contracts he signed. *Id.* at 12, 70-71. He testified he received a commission based on a percentage of each payment received from Embassy. *Id.* at 21.

The above contractual arrangements were in place in late March or early April, 2015, when Ms. Kleeberg applied for what she believed to be employment with Embassy Suites. Ms. Kleeberg received a document printed in Spanish which read:

Profit Lines Services, Inc.

I acknowledge I am responsible for a labor position in the hotel and I am paid a fee based on the work I do.

1.    No one from Profit Line Services, Inc. sets my hours, supervises my work, provides me with a vehicle, tools or materials including uniforms or name tags.

2.    I am aware that at the year end, Profit Line Services, Inc. will report to the Federal Government the amount of payments made to me on a form 1099.

Ms. Kleeberg signed the document and began work at Embassy's hotel on April 11, 2015. She testified that supervisors directed all aspects of her work and gave her a brown tunic like those of Embassy employees and a name tag bearing the Embassy Suites logo. Ms. Kleeberg further testified that her supervisors prepared her schedule, provided her with a time card, and designated and inspected the rooms she cleaned. The supervisors also provided her with equipment, cleaning supplies and the complimentary items, such as packets of coffee, she stocked in each room. Ms. Kleeberg received pay checks from Profit Line's account for $7.50 per hour.[5] Profit Lines did not take deductions from the checks.

Embassy and Environmental stipulated that on May 9, Ms. Kleeberg fell at work while walking to obtain fresh sheets to change bedding in the rooms her supervisors assigned her to clean. She testified she immediately experienced "deep pain" in her left arm when she struck the floor. Ms. Kleeberg's supervisors helped her from the floor and took her to a small room. After she sat in the room for a long period with no treatment other than a small ice pack, she decided to drive herself to the emergency room. Ms.

---

[4] The Court granted United's summary judgment motion when the opposing parties failed to rebut its owner's sworn affidavit indicating that it had no obligation to provide workers to staff positions at Embassy.

[5] Paychecks introduced into evidence document that Profit Lines paid Ms. Kleeberg $350.70 (for 46.76 hours) on April 30, 2015; $506.40 (for 67.52 hours) on May 15, 2015; and $133.12 (for 17.75 hours) on May 31, 2015. The latest-dated check included the pay Ms. Kleeberg received for the date of injury.

Kleeberg testified a Spanish-speaking supervisor approached her as she was leaving the hotel. She reported her injury to this supervisor and told her she needed treatment, but the supervisor did not authorize her to seek medical care.

Ms. Kleeberg drove herself to Erlanger East Hospital, which referred her for orthopedic evaluation. On May 14, orthopedic surgeon Dr. Woodfin Kennedy noted that Ms. Kleeberg transitioned to his care from an emergency room and recorded that "she sustained an injury when she was working at Embassy Suites and fell." He diagnosed a fractured wrist, recommended surgery, and released Ms. Kleeberg to return to work with no use of her left hand and wrist.

On June 1, Dr. Kennedy surgically placed multiple screws in Ms. Kleeberg's left wrist to repair a "left distal radius fracture with greater than three fragments." Following his first post-surgery exam, Dr. Kennedy released Ms. Kleeberg to return to work but limited her to lifting no more than two pounds with her left arm. On September 3, he increased the limitation to five pounds and lifted it completely on October 22. Dr. Kennedy determined that Ms. Kleeberg attained maximum medical improvement on April 7, 2016, and rated her injury at four percent permanent impairment to the whole body.

Ms. Kleeberg testified she was without work from the date of injury until November 28, 2015, when she took a warehouse job, which she left in February 2016 because her injury prevented her from keeping pace. In May 2016, she took another hotel housekeeping position but left that job in September because her injury caused her to work too slowly. After three more months without work, Ms. Kleeberg obtained her current job as a hotel housekeeper.

### Findings of Fact and Conclusions of Law

*Evidentiary Determinations*
*Medical Records*

Embassy and Environmental objected to Ms. Kleeberg's request to admit Dr. Kennedy's and the Erlanger East emergency room records into evidence. Both parties complained that Ms. Kleeberg did not file an exhibit list or list the subject medical records in her Pre-Hearing Statement. Environmental further objected on the ground that Ms. Kleeberg did not call witnesses to authenticate the records.

Embassy and Environmental conceded they had received and reviewed the records during the pendency of the claim. In fact, the Court noted that, on March 23, 2017, they received the subject records attached to the Post-Discovery Dispute Certification Notice (DCN). Additionally, Embassy identified the admissibility of the records as an issue for the Court's determination during the Compensation Hearing.

4

In deciding these objections, the Court considered that Ms. Kleeberg represented herself in this claim. In *Silas v. Brock Services,* 2015 TN Work. Comp. App. Bd. LEXIS 35, *10-11 (Oct. 2, 2015), the Workers' Compensation Appeals Board held, "[p]arties who decide to represent themselves are entitled to fair and equal treatment by the courts." After stating self-represented litigants must comply with the same substantive and procedural requirements as represented parties, the Appeals Board held, "[t]he courts give *pro se* litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by *pro se* litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Id.* at 11.

While Ms. Kleeberg did not file an exhibit list, her pre-hearing statement did inform Embassy and Environmental that she intended to rely on Dr. Kennedy's treatment and impairment rating in presenting her claim. In light of the leeway given a self-represented litigant in drafting pleadings, the Court found that Ms. Kleeberg's pre-hearing statement gave Embassy and Environmental notice of her intent to introduce Dr. Kennedy's records during the Compensation Hearing. Accordingly, the Court overruled their objections. However, because Ms. Kleeberg did not reference the treatment she received at the Erlanger East emergency room in her pre-hearing statement, the Court sustained their objections as to those records.

The Court overruled Environmental's argument that the Court should exclude the records of Dr. Kennedy on hearsay grounds because Ms. Kleeberg did not call witnesses to authenticate the records. Tennessee Compilation Rules & Regulations 0800-02-21-.16(6)(b) (November 2016) provides that records signed by a physician, including by electronic signature, "shall be admissible." This rule clearly authorizes the admission of a medical record signed by the physician.

*The Service Agreement, Invoices, and Time Records*

Embassy sought to admit various documents through Environmental's responses to Requests for Admissions to which Environmental objected based on lack of authentication.[6] Tennessee Rule of Civil Procedure 36.01 (2016) provides in pertinent part that, "[a] party may serve upon any party a written request for admission . . . of the truth of any matters . . . that relate to . . . the genuineness of any described document." Here, Environmental admitted the documents were genuine and spoke for themselves. Thus, the documents were properly authenticated and admissible as evidence.

---

[6] Exhibit 13 contains Environmental's responses to Embassy's second set of Requests for Admissions does not include the documents attached to the requests when Embassy served them on Environmental. Exhibit 14 is an unsigned version of Exhibit 13 that attaches copies of the documents inadvertently omitted from Exhibit 14.

*Applicable Legal Principles*

Ms. Kleeberg bears the burden of proving all essential elements of her claim. *See Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016).

*Employee/Independent Contractor*

Embassy and Environmental contend Ms. Kleeberg is not entitled to benefits because she was an independent contractor at the time of her injury. Tennessee Code Annotated section 50-6-102(11)(D) (2016) sets out several factors that determine whether an individual is an employee or an independent contractor:

> (i) The right to control the conduct of the work;
> (ii) The right of termination;
> (iii) The method of payment;
> (iv) The freedom to select and hire helpers;
> (v) The furnishing of tools and equipment;
> (vi) Self-scheduling of working hours; and
> (vii) The freedom to offer services to other entities."

In considering the above factors, the Appeals Board held in *Thompsen v. Concrete Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *14-16 (Feb. 10, 2015), that:

> These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." (Case citations omitted.)

In analyzing this claim, the Court notes that Ms. Kleeberg was paid $7.50 per hour as a housekeeper at Embassy's hotel. She provided unrebutted testimony that her supervisors at Embassy's hotel provided her a uniform and a name tag bearing Embassy Suites' logo to wear when she worked. She asserted that her supervisors scheduled the

days and hours she worked, designated the rooms she cleaned, and provided her the equipment, cleaning supplies and complimentary items she used to perform her housekeeping duties. The Court holds Ms. Kleeberg testified credibly about working at Embassy as a housekeeper and about the conditions of her employment. Accordingly, the Court finds that the burden shifts to Embassy and Environmental to establish Ms. Kleeberg was an independent contractor. *See Thompsen, supra,* at *16.

Embassy and Environmental chiefly relied on the document Ms. Kleeberg signed to prove she was an independent contractor. However, as the Appeals Board held in *Thompsen, supra* at * 16:

> [t]he designation given by the parties in their contract does not dictate the applicability of the Workers' Compensation Law. Our Supreme Court has stated that "a contract purporting to establish the plaintiff as an 'independent contractor' is insufficient when the facts surrounding the arrangement indicate [otherwise]." Such a provision is not dispositive[.]

(Citation omitted.)

Therefore, the Court holds the conditions of Ms. Kleeberg's employment at Embassy's hotel establish she was an employee, not an independent contractor, at the time of her injury.

*Causation*

Embassy and Environmental urged the Court to deny Ms. Kleeberg's claim because the medical records she introduced did not contain an expert medical opinion on causation. Tennessee Code Annotated section 50-6-102(14) (2016), defines a compensable work injury as an "injury by accident." Section 50-6-102(14)(A) defines "injury by accident" as one "caused by a specific incident . . . arising primarily out of and in the course and scope of employment." Section 50-6-102(14)(B) provides that the employee must establish that his or her injury arose primarily out of and in the course and scope of employment by proof "that the employment contributed more than fifty percent (50%) in causing the injury, *considering all causes*." (Emphasis added.) Section 50-6-102(14)(C) provides that, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, *considering all causes*." (Emphasis added.)

Regarding evidence of causation, Embassy and Environmental stipulated that Ms. Kleeberg fell on Embassy's premises while cleaning. Ms. Kleeberg testified credibly, and without rebuttal, that she suffered immediate severe left-wrist pain when she fell and, later the same day, received emergent treatment for left-wrist pain. Dr. Kennedy's

records establish Ms. Kleeberg transitioned to his care from an emergency room, and when he saw her five days after she fell, he diagnosed her with a wrist fractured into more than three segments.

Irrespective of the above facts, Embassy and Environmental contend the law requires that all employees seeking workers' compensation benefits establish their claim by expert medical opinion. Accordingly, they argue Ms. Kleeberg's claim must fail because of the absence in the record of a medical opinion that her injury arose primarily out of and in the course and scope of employment.

In deciding this issue, the Court notes the following discussion of the Appeals Board in *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *27-8 (Nov. 9, 2015):

> Prior to the 2013 Workers' Compensation Reform Act, the law was clear that a workers' compensation claimant did not have to establish by expert medical testimony a causal relationship between the injury and the claimant's employment in "the most obvious, simple and routine cases." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). In light of the new statutory language found in sections 50-6-102(13)(B) and 50-6-102(13)(C), it is unclear whether expert medical testimony is now required in cases deemed to be "obvious, simple and routine."

The Court holds the "obvious injury" rule remains viable under the new law, at least in the context where, as here, the evidence fails to establish potential causes other than the work accident to account for the employee's injury. The Court infers that the phrase "considering all causes" in the definition of a compensable injury indicates the general assembly's intention to preserve the "obvious injury" rule as stated above in *Willis* when the evidence does not implicate any other causes except the claimed work injury.

Here, Embassy and Environmental stipulated Ms. Kleeberg fell while working as a housekeeper at Embassy's hotel. Furthermore, the evidence established that Ms. Kleeberg successfully cleaned rooms for approximately seven hours each day on the two days immediately preceding the date of injury and cleaned rooms for some period of time on May 9 before she fell. The Court finds it unlikely Ms. Kleeberg could physically have cleaned rooms during the above periods of time with a wrist shattered into more than three segments.

In view of the above, the Court finds the preponderance of the evidence establishes that Ms. Kleeberg fractured her left wrist when she fell while working at Embassy's hotel on May 9. As such, the Court finds she is not required to establish the work-relatedness of her left-wrist fracture by expert medical opinion.

Ms. Kleeberg testified her private insurance paid for the treatment she received for her left wrist injury. She attempted to admit billing records evidencing the amount the treating providers charged for treatment of her left wrist but did not offer witnesses to authenticate the bills as records of regularly-conducted activity. For that reason, the Court sustained Embassy's and Environmental's hearsay objections to the billing records. In that the Court has before it no evidence of the charges Ms. Kleeberg incurred for the treatment of her claimed injury, it will not award the past medical benefits she sought.

However, in view of the Court's ruling that Ms. Kleeberg established she fractured her left wrist while working at Embassy's hotel, the Court awards medical benefits for on-going reasonable and necessary treatment of the subject injury per Tennessee Code Annotated section 50-6-204 (2016). The Court holds Dr. Kennedy shall be the authorized treating physician for the provision of ongoing medical benefits.

Ms. Kleeberg additionally claimed temporary disability benefits for several periods during which she was without work following her left-wrist injury. Dr. Kennedy released her to return to work but placed significant lifting restrictions on the use of her left-wrist throughout his treatment.

In *King v. Compass Heating and Air,* 2016 TN Wrk. Comp. App. Bd. LEXIS 89, at *3-4 (Nov. 22, 2016), the Workers' Compensation Appeals Board held,

> An injured worker is eligible for temporary disability benefits if (1) the worker became disabled from working due to a compensable injury, (2) there is a causal connection between the injury and the inability to work, and (3) the worker established the duration of the period of disability. *James v. Landair Transp., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Aug. 26, 2015).[7]

While Ms. Kleeberg testified about several periods of unemployment following her injury, she presented no evidence as to what, if any, efforts she and/or Profit Line/Environmental made to return her to restricted-duty work at Embassy's hotel. Further, the Court notes that Dr. Kennedy's restrictions limited only the use of her left arm and that Ms. Kleeberg obtained two jobs while under the restrictions. Accordingly, Ms. Kleeberg failed to prove a connection between her claimed disability and her work injury; thus, the Court denies her claim to temporary disability benefits.

Finally, Ms. Kleeberg sought permanent partial disability benefits based on Dr.

---

[7] The Appeals Board in *James* held the factors enumerated above apply to a claim for temporary partial disability benefits.

Kennedy's rating of four percent permanent partial impairment to the whole body. The Court holds that Ms. Kleeberg is entitled to the benefits she seeks.

The Workers' Compensation Law provides two tiers of permanent partial disability benefits. Section 50-6-207(3)(A) (2016) provides for an "original award" that is calculated "by multiplying the employee's impairment rating by four hundred fifty (450) weeks." Section 50-6-207(3)(B) provides for enhanced benefits "[i]f at the [original] period of compensation . . . the employee has not returned to work with any employer or has returned to work and is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from the employee's pre-injury employer on the date of injury."

The Court finds Dr. Kennedy's impairment rating established the permanency of Ms. Kleeberg's left-wrist injury. Accordingly, the Court awards her eighteen weeks of permanent partial disability benefits based on the impairment rating. However, Dr. Kennedy placed her at maximum medical improvement on April 7, 2016, thus her original compensation period ended on August 11, 2016. On that date, Ms. Kleeberg was employed cleaning hotel rooms at a higher rate of pay than she earned at Embassy's hotel. Therefore, the Court finds Ms. Kleeberg is not entitled to enhanced benefits. *See* Tenn. Code Ann. § 50-6-207(3)(B) (2016).

With regard to her compensation rate, Ms. Kleeberg cleaned rooms at Embassy's hotel from April 11 through May 9, 2015, a period of four weeks, and earned wages totaling $990.22. *See* footnote 5. Accordingly, the Court finds her average weekly wage was $247.55, and her compensation rate was $164.04. *See* Tenn. Code Ann. § 50-6-207(3)(A) (2016). In view of the above, the Court awards Ms. Kleeberg $2,952.72 in payment for eighteen weeks of permanent partial disability benefits.

*Direct Employer and Statutory Employers*

An "employer" is defined as "any individual, firm, association or corporation, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay[.]" Tenn. Code Ann. § 50-6-102(14) (2016). The Court finds Profit Line employed Ms. Kleeberg to work as a housekeeper at Embassy's hotel and paid her for the work she performed. Therefore, the Court finds Profit Line is Ms. Kleeberg's direct employer and is liable to her for the benefits awarded herein.

Embassy and Environmental contended they are not liable to Ms. Kleeberg because Profit Line was her direct employer. However, that fact does not necessarily absolve them from liability. Tennessee Code Annotated section 50-6-113 (2016) extends the liability for workers' compensation benefits to "statutory employers", *i.e.,* parties bound by contract with the uninsured direct employer of an employee who suffers a work-related injury.

Ms. Kleeberg first presented this claim against Profit Line. Profit Line did not respond to the PBD Ms. Kleeberg filed against it, either through an attorney or carrier. Although the Court ordered benefits against Profit Line in an Expedited Hearing Order, Profit Line did not pay the ordered benefits. For the above reasons, Ms. Kleeberg filed PBDs against Embassy and Environmental.

Section 50-6-113(a) (2016) provides, "[a] principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer." In *Stratton v. United Inter-Mountain Tel. Co.,* 695 S.W.2d 947, 951 (Tenn. 1985), the Supreme Court held that section 50-6-113(a) "prevents employers from contracting out normal work simply to avoid liability for workers' compensation." The Supreme Court in *Stratton* went on to hold that the imposition of liability under section 50-6-113(a) requires an employee to establish that, (1) at the time of injury, a contractual relationship existed between the employee's direct employer and the alleged statutory employer, and (2) the employee's injury occurred while he or she was engaged upon the subject matter of the contract to the same extent of the immediate employer.

By means of its Service Agreement with Environmental and Profit Line, Embassy contracted out positions that are fundamental to its provision of lodging accommodations to guests. Accordingly, Embassy was a principal contractor as contemplated by section 50-6-113(a). Environmental's president testified that Environmental had a sub-contractor relationship with Profit Line under which the latter hired and trained the workers that Environmental was obligated to provide under the Service Agreement with Embassy. Accordingly, Environmental was an intermediate contractor; Profit Line, a subcontractor under section 50-6-113(a). In that the Service Agreement obligated Environmental and Profit Line to staff housekeeper positions at Embassy Suites, the Court holds Ms. Kleeberg injured her left wrist while engaged in an activity that the Service Agreement obligated Environmental and Profit Line to provide for Embassy.

In spite of the Service Agreement, Embassy contended it was not a statutory employer because (1) it did not control Ms. Kleeberg's work, and (2) its regular business was renting rooms to guests, not cleaning rooms. In *Lindsey v. Trinity Communications, Inc.* 275 S.W.3d 411, 421 (Tenn. 2009), the Supreme Court held:

> Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) "the work being performed by a subcontractor's employees is part of the regular business of the company

11

or is the same type of work usually performed by the company's employees."

(Citation omitted).

As indicated above, it is the right of control, and not the exercise of actual control, that establishes a party's liability as a statutory employer. The Court holds that the following language in paragraph 6 of the Service Agreement gave Embassy the right to control the activities of Profit Line's employees:

C.    If the performance of any worker is unsatisfactory to the Customer [Embassy], Customer shall notify ESS and ask the ESS supervisor to take appropriate steps to bring the performance of said work into compliance with Customer's standards. Customer may ask ESS to remove a worker (immediately or at the end of the current shift) from Customer's premises at Customer's direction, ESS shall be responsible for disciplining said worker in the way ESS feels appropriate. ESS shall replace said worker on next required business shift and take necessary steps to complete currently assigned job tasks.

D.    All workers will be held to the same standards and rules as employees of the Customer. ESS agrees to cooperate and assist in any investigation initiated by the Customer's Loss Prevention or Security personnel involving any worker provided by ESS.

(Ex. 14 at 10-11.)

Thus, Embassy retained the right to require Profit Line's employees to work in a manner consistent with a standard that Embassy set. The provisions also empowered Embassy to require that Profit Line remove workers it provided for Embassy. The Court holds the Service Agreement provided Embassy with sufficient control of Ms. Kleeberg's work to impose statutory employer liability on Embassy.

The Court also rejects Embassy's argument that it is not a statutory employer because its regular business does not include cleaning rooms. Embassy admitted in response to Environmental's Request for Admissions number 6 that "the Hotel [Embassy] is subject to certain laws, rules and regulations requiring minimum cleanliness requirements." (Ex. 19 at 8.) Furthermore, Embassy responded as follows to Environmental's Request for Admission number 10:

[I]t is admitted that on the day Monica Kleeberg alleges she sustained injury, she was employed by Profit Line to perform housekeeping duties at the Embassy premises pursuant to the May 27,

12

2014 service agreement and that Embassy/Certistaff complied with the applicable rules and regulations [governing cleanliness] by contracting with ESS and Profit Line to provide human persons to perform housekeeping and other services pursuant to the May 27, 2014 service agreement. (Ex. 19 at 10.)

In view of the above admissions, the Court rejects Embassy's argument that its regular business did not include providing its guests clean rooms.

Mr. Parr sought to avoid Environmental's liability by testifying Profit Line had the sole responsibility to hire, train and control the workers provided under the contract. The Court gives no weight to Mr. Parr's testimony on this point. The Service Agreement obligated Environmental to execute all obligations within it, including providing housekeeping workers. In fact, the Service Agreement itself referred to the parties that were obligated to Embassy under the contract as "ESS," and Embassy received invoices from "ESS, Inc." for the work performed by the workers, including the housekeepers. Furthermore, Mr. Parr testified Environmental received a portion of every check Embassy paid for the labor provided.

In view of the above, the Court holds Environmental was responsible for the execution of the Service Agreement to the same extent as Profit Line. This obligation included providing workers that performed their work to Embassy's standards. To meet its obligation, Environmental retained the right to exert control over the employees provided under the Service Agreement to see that they met Embassy's standards. Accordingly, the Court rejects Environmental's contention it is not a statutory employer.

Environmental also argued that if the Court holds it is a statutory employer, Ms. Kleeberg cannot recover against it (or Embassy) until she receives a judgment against Profit Line and attempts to recover from Profit Line. *See* Tenn. Code Ann. § 50-6-113(c) (2016). This position is without merit.

In *P.H. Reynolds & Co. v. McKnight*, 177 Tenn. 228, 148 S.W.2d 357, 360 (Tenn. 1941), the Supreme Court held that "the provision that 'every claim . . . shall be in the first instance presented to and instituted against the immediate employer' relates to the notice and to the service of notice. To the preliminaries of suit on the claim, not to the suit itself." Here, Profit Line, the direct employer, had actual notice of Ms. Kleeberg's injury through the observations of its supervisors on the date of injury. Furthermore, Ms. Kleeberg brought this claim against Profit Line before she brought it against Embassy and Environmental. Accordingly, she complied with section 50-6-113(c) and can now proceed against Embassy and Environmental, which are jointly and severally liable with Profit Line as statutory employers for her workers' compensation benefits.

13

**IT IS, THERFORE, ORDERED AS FOLLOWS:**

1. Ms. Kleeberg's claim to temporary disability benefits is denied;
2. Ms. Kleeberg's claim to past medical benefits is denied;
3. Ms. Kleeberg is awarded ongoing medical benefits consisting of reasonable and necessary treatment of her compensable left-wrist injury under the authorized care of Dr. Woodfin Kennedy;
4. Ms. Kleeberg is awarded eighteen weeks of permanent partial disability benefits at a compensation rate of $164.04 per week, totaling $2,952.72;
5. Ms. Kleeberg is awarded benefits against Profit Line as her direct employer and against Embassy and Environmental as statutory employers. Ms. Kleeberg may seek to recover this award directly against Embassy and Environmental if she opts to do so;
6. Embassy shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244 (2016); and
7. Costs of this cause of $150.00 are assessed against Profit Line, Embassy and Environmental pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

**ENTERED this the the day of May, 2017.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**Appendix**

Technical Record:

1. Petition for Benefit Determination against Profit Line Services/Rudy Lugo;
2. Dispute Certification Notice against Profit Line Services/Rudy Lugo;
3. Request for Expedited Hearing against Profit Line Services/Rudy Lugo;
4. Expedited Hearing Order for Medical Benefits (Record Review Only);
5. Petition for Benefit Determination against Embassy Suites/Certistaff;
6. Petition for Benefit Determination against Environmental Solutions Systems;
7. Dispute Certification Notice against Environmental Solutions Systems;
8. Dispute Certification Notice against Embassy Suites/Certistaff;
9. Embassy Suites'/Certistaff's statement of additional defenses;

14

10. Order of Consolidation;
11. Order Dismissing Claim Against Russell Floersheim, D/B/A United Resource Group, Upon Summary Judgment;
12. Embassy's Motion for Summary Judgment, including briefs and responses in support thereof;
13. Environmental's Motion for Summary Judgment, including briefs and responses in support thereof;
14. Order Denying Embassy Suites' Motion for Summary Judgment;
15. Order Denying Environmental Solutions Systems' Motion for Summary Judgment;
16. Order Denying Environmental Solutions Systems' Motion to Reconsider;
17. Initial Hearing (Scheduling) Order filed November 22, 2016;
18. Order filed March 10, 2017;
19. Post-Discovery Dispute Certification Notice;
20. Witness List of Embassy Suites/Certistaff;
21. Exhibit List of Embassy Suites/Certistaff;
22. Witness List of Environmental Solutions Systems;
23. Exhibit List of Environmental Solutions Systems;
24. Environmental Solutions Systems' Statement of Unresolved Evidentiary Disputes;
25. Statement of Unresolved Evidentiary Disputes on Behalf of Embassy Suites/Certistaff;
26. Environmental Solutions Systems' Motion to Compel, to Deem Requests for Admission Admitted, and For Sanctions;
27. Embassy Suites'/Certistaff's Supplemental Responses to Environmental Solutions Systems' Interrogatories and Requests for Production of Documents;
28. Pre-Compensation Hearing Statement of Monica Kleeberg;
29. Pre-Compensation Hearing Statement of Embassy Suites/Certistaff;
30. Pre-Compensation Hearing Statement of Environmental Solutions Services;
31. Order Requiring the Parties to Provide a Certified Spanish-English Interpreter for Compensation Hearing.

Exhibits:

The Court marked the following documents as evidence during the Compensation Hearing:

1. Operative report of Dr. Woodfin Kennedy, admitted over objections;

15

2. Erlanger East emergency room records, marked for identification only because the Court sustained objections;
3. Records of Dr. Woodfin Kennedy, admitted over objections;
4. Final Medical Report of Dr. Woodfin Kennedy, admitted over objections;
5. Billing records, marked for identification only because the Court sustained objections;
6. English and Spanish versions of document signed by Ms. Kleeberg and Rudy Lugo;
7. Copies of paychecks from Profit Line Services, Inc. to Ms. Kleeberg;
8. Invoices from ESS, Inc. to Embassy Suites Chattanooga, marked for identification only because the Court sustained objections;
9. Supplemental Affidavit of Jan Felix, marked for identification only because the Court sustained objection;
10. Transcript of the deposition of William Parr, which the Court read in its entirety;
11. Service Agreement, marked for identification only because the Court sustained objection;
12. Environmental's responses to Embassy's first set of Requests for Admission;
13. Environmental's responses to Embassy's second set of Requests for Admission, admitted over objection;
14. Unsigned version of Embassy's second set of Requests for Admission to Environmental, including the documents attached to the requests originally propounded on Environmental, admitted over objection;
15. Environmental's responses to Embassy's Interrogatories and Requests for Production of Documents, admitted over objection;
16. Invoices from ESS, Inc. to Embassy (also attached to Exhibit 14), admitted over objection;
17. Paychecks from Profit Line to Ms. Kleeberg (also attached to Exhibit 14), admitted over objection;
18. Embassy's time cards documenting the hours Ms. Kleeberg performed at Embassy's hotel (also attached to Exhibit 14), admitted over objection;
19. Embassy's second supplemental responses to Environmental's Requests for Admission, Interrogatories and Requests for Production of Documents; and
20. Verification page to Embassy's responses to Environmental's written discovery.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this 22nd day of May, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Monica Kleeberg, Self-Represented | X | | X | Giancarlor20@gmail.com   and c/o Ms. Monica Kleeberg, 4900 Maywater Rd., Ooltewah, TN 37363 |
| Profit Line Services, Inc. c/o Rudy Lugo | | | X | Rudylugo123@hotmail.com |
| Mike Anderson and Jeremy Cothern, Attorneys | | | X | manderson@pbsjlaw.com;jcothern@pbsjlaw.com |
| Kristin Stevenson, Attorney | | | X | kcstevenson@misj.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

17