

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| Darry Osborne, | ) | Docket No. 2016-02-0562 |
| Employee, | ) | |
| v. | ) | State File No. 97626-2016 |
| | ) | |
| Starrun, Inc., et al. | ) | Judge Brian K. Addington |
| Employer. | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on May 31, 2017, upon the Request for Expedited Hearing filed by Darry Osborne for temporary disability and medical benefits. On the date of injury, Mr. Osborne's employer, Starrun, did not have a workers' compensation insurance policy. The central legal issue is whether the remaining two named defendants, KPS Global and Meadow Lark Agency, qualify as statutory employers under Tennessee Code Annotated section 50-6-113 (2016). The Court holds that Mr. Osborne has not come forward with sufficient evidence to establish that either KPS Global or Meadow Lark Agency was his statutory employer on the date of injury and thus not likely to prevail at a hearing on the merits on this issue. Therefore, his request for workers' compensation benefits is denied.

### History of Claim

Mr. Osborne is a sixty-nine-year-old resident of Richlands, Virginia, and a professional truck driver. On October 21, 2016, he drove a tractor-trailer for Starrun, a trucking company located in Bluff City, Tennessee. Approximately one month after Starrun hired Mr. Osborne, it arranged for him to pick up a load of industrial walk-in refrigerator panels at the KPS Global facility in Piney Flats, Tennessee, for transport to East Liverpool, Ohio. Mr. Osborne drove a flatbed truck owned by Starrun to the KPS facility. Starrun also provided the tarp to be placed over the load.

When he arrived at KPS, several other trucks were in line to be loaded with the panels. Eventually, a KPS employee instructed Mr. Osborne to back into a loading bay,

1

where other KPS employees loaded his truck with the refrigerator panels. A forklift operator then placed a tarp on top of the load. Mr. Osborne began to tarp his load in the bay, but a KPS employee instructed him to pull outside to finish. Mr. Osborne moved his loaded truck outside of the covered facility to complete the tarping.

Once outside, Mr. Osborne stepped on top of the loaded panels to pull the tarp. The day was misty and moisture settled on the panels and his truck. While attempting to tarp his load, Mr. Osborne slipped and fell approximately ten feet onto his truck's metal catwalk below and sustained injuries as a result of the fall.

According to Mr. Osborne's testimony, Starrun employed him on the date of injury. He received wages from Starrun and received instructions from Donna Johnson, the Starrun dispatcher, or from another Starrun employee, "Mark," who gave him the faxed documents instructing him on where to pick up loads. He identified Steve Rife as another Starrun representative who interacted with him. In particular, Mr. Rife showed him how to pick up loads at KPS. He did not receive work instructions from KPS and did not consider himself an employee of KPS.

Meadow Lark Agency is also a party to this action. Meadow Lark operates out of Billings, Montana, and provides brokerage services between trucking companies and manufacturers. (Ex. 10 at 7.) KPS used Meadow Lark, as well as several other agencies, to procure trucking services when its clients required the purchased refrigerator panels to be shipped. KPS customers were also free to make their own transportation arrangements.

KPS and Meadow Lark entered into a contractual agreement regarding the brokerage services to be provided. (Ex. 4.) KPS paid Meadow Lark for each haul, and Meadow Lark, in turn, paid a percentage of those funds to Starrun, the carrier who accepted the work. (Ex. 12 at 36.)

Starrun saw the listing Meadow Lark placed for the KPS load and contacted Meadow Lark to obtain the right to haul it. Meadow Lark awarded the run to Starrun, and the two parties entered into a contractual agreement setting forth the transport terms. (Ex. 5.) The contract between Meadow Lark and Starrun included a provision obligating Starrun to carry "workers' compensation [insurance] with limits required by law." *Id.* at 3. An addendum containing the order specifications was attached to the contract on October 19, 2016. (Ex. 6.) Meadow Lark had no direct dealings with Mr. Osborne. (Ex. 12 at 27.)

Several witnesses testified at the hearing.

*Kevin Bennett Testimony*

Kevin Bennett, a senior quality technician at KPS, testified that he worked as the

2

shipping supervisor at KPS and that KPS does not deal directly with trucking companies to transport its product. Rather, it relies on its brokers, including Meadow Lark, to make transportation arrangements. It does not hire truck drivers, nor is it in the shipping business. It manufactures industrial refrigerator panels. Mr. Bennett acknowledged that his company loads trucks that deliver its product to customers, but its brokers, and not KPS, decide which carriers to use. He added that the instructions KPS dock workers give to drivers, primarily for safety reasons, are the same, whether the drivers work for its customers directly or are procured through brokers.

Mr. Bennett acknowledged that KPS has a tarping machine on-site; however, many drivers complained that the machines tore tarps, so many drivers did not use it. He added that drivers are not allowed to manually tarp on KPS property, but may use a side road.

### Deposition Testimony of Michael Kandas

Meadow Lark's Chief Operating Officer, Michael Kandas, testified via deposition on April 24, 2017. Mr. Kandas confirmed that Meadow Lark is in the business of brokering trucking services between those requiring shipping ("shippers") and trucking companies ("carriers"). (Ex. 10 at 7.) He asserted that Meadow Lark does not determine the route to be used by the drivers. *Id.* at 26. While it advises what equipment is necessary to haul a particular load, including whether a tarp or a flatbed trailer is needed, it does not instruct the drivers on how to perform their work. Driver training is left to the carriers the drivers work for. *Id.* at 27. Mr. Kandas also confirmed that Meadow Lark may only offer a haul to a carrier and has no right to force a carrier to accept a load. *Id.* at 38.

### Other Testimony Considered

The parties submitted the deposition testimony of Barbara Benfit, Meadow Lark's Vice President for Quality; Tyson Vanlandingham, a business development representative for Meadow Lark who coordinated with KPS; Donna Johnson, one of the principal owners of Starrun; and Mr. Osborne. The Court examined and considered each of the deposition transcripts. The Court also heard and considered the testimony of Mollie O'Dell, KPS's Health and Safety Representative, concerning the incident and the type of business KPS operated, and Dwayne Fillers, an independent truck driver who was present at KPS's facility that day.

### Expedited Request for Investigation Report

Starrun did not obtain a workers' compensation insurance policy and was uninsured on the date of Mr. Osborne's injury. The Bureau investigated Starrun's lack of coverage and generated a report detailing its findings dated November 22, 2016. The

Bureau determined that Starrun had four employees and, thus, was not subject to the Workers' Compensation Law under Tennessee Code Annotated section 50-6-102(13) (2016). The report is attached as Exhibit 3 to Tyson Vanlandingham's deposition. (Ex. 12.)

*Parties' Arguments*

Mr. Osborne asserted that, while he was an employee of Starrun, it did not have workers' compensation coverage on the date of his accident. However, he believed Starrun had five or more employees based on the number of individuals he observed working at the Starrun site. He further argued that Meadow Lark and KPS qualify as his statutory employers under Tennessee Code Annotated section 50-6-113 (2016), and therefore are responsible for paying workers' compensation benefits relative to the October 21, 2016 accident. Mr. Osborne asserted he is entitled to both medical and temporary disability benefits.

KPS argued that it does not meet the requirements of a statutory employer in this matter and is not responsible for the requested workers' compensation benefits. However, KPS further asserted that Meadow Lark is Mr. Osborne's statutory employer and is liable to him for any applicable workers' compensation benefits. In support of its position, KPS argued that Meadow Lark decided which carrier gets the haul; possessed the right to hire and terminate carriers; and paid carriers instead of KPS.

Meadow Lark contended it does not qualify as Mr. Osborne's statutory employer and is not responsible for any workers' compensation benefits owed. It asserted it did not control the work performed by Mr. Osborne or Starrun, but only controlled to whom it offered the haul. It emphasized that KPS provides the instructions pertaining to each of its hauls and that Meadow Lark only passes those instructions along to each carrier. In addition, Meadow Lark pointed out that KPS controls its premises, including when and where drivers can tarp loads, and Mr. Osborne's accident occurred on KPS property.

**Findings of Fact and Conclusions of Law**

As in all workers' compensation actions, Mr. Osborne, as the employee, has the burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. However, at an expedited hearing, Mr. Osborne has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2016).

Initially, the Court adopts the findings of the Bureau's investigative report concerning Starrun's status under the Workers' Compensation Law. According to the

4

report, the Bureau found that Starrun only employed four employees, which means it does qualify as an employer under the Workers' Compensation Law. *See* Tenn. Code Ann. §50-6-102(13) (2016). Consequently, Starrun was not required to carry workers' compensation insurance on its employees and bears no liability for any workers' compensation benefits Mr. Osborne may be entitled to as a result of his October 21, 2016 work accident.

The remaining question is whether Meadow Lark and/or KPS may be held liable for Mr. Osborne's workers' compensation benefits as statutory employers.

The statute allows for workers' compensation liability of a contracting party despite the fact that the contracting party does not directly employ the injured worker. In particular, "[a] principal contractor, intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. §50-6-113(a) (2016).

The statute "applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or that are otherwise under the principal contractor's control or management." Tenn. Code Ann. §50-6-113(d) (2016). The liable contractor is considered a "statutory employer" of the injured worker.

In *Lindsey v. Trinity Commc'ns.s, Inc.*, 275 S.W.3d 411 (Tenn. 2009), the Tennessee Supreme Court set forth three criteria by which a contracting party may be deemed a statutory employer. Liability may attach to a contractor if:

1) the company undertakes work for an entity other than itself;
2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or
3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees.

*Id.* at 421. The purpose of the statute is to "[prevent] employers from contracting out normal work simply to avoid liability for workers' compensation. In addition, it encourages employers to hire responsible, insured subcontractors." *Id.* at 420.

The Court will first consider Meadow Lark's status in light of the above criteria. According to Tennessee Code Annotated section 50-6-113(d) (2016), the statute *only applies* when the injury occurs on or about the premises controlled by the contractor. Meadow Lark operates its brokerage business out of its facility in Billings, Montana. It

had no control over KPS' premises, nor did it undertake to perform work there. On that basis alone, Meadow Lark cannot be Mr. Osborne's statutory employer, as it fails to meet a primary requirement set forth in the applicable statute.

In addition, the Court finds that Meadow Lark does not meet any of the three *Lindsey* requirements. Meadow Lark performs brokerage services on its own behalf. The parties provided no evidence that it performs brokerage services for any other brokerage company. Meadow Lark did not retain the right to control Mr. Osborne's work. At most, it merely passed along KPS' requirements for shipping of its load. It had no direct dealings with Mr. Osborne. Lastly, the work Mr. Osborne performed, namely hauling products via trucks, is not part of Meadow Lark's regular business. Meadow Lark arranges trucking services for its clients. It does not engage in trucking. For the above reasons, the Court finds that Meadow Lark is not Mr. Osborne's statutory employer. It bears no liability for any workers' compensation benefits Mr. Osborne may be entitled to as a result of his accident.

The Court next turns to KPS. The Court finds Tennessee Code Annotated section 50-6-113(d) applies to KPS, as it controlled and managed the premises upon which Mr. Osborne's accident occurred. However, KPS does not meet the *Lindsey* criteria of a principal contractor.

There is no evidence that KPS undertook work for any entity other than itself. KPS is a manufacturing company that produces industrial refrigerator panels. While it maintains shipping bays and loads trucks that ship its products to its customers, that mere fact does not make the transportation of its product a part of its regular business, nor is it the same work performed by KPS employees. The parties provided no evidence that KPS engaged in the shipping of its product or had any employees that did so. Rather, the proof was that either its customers provide shipping directly or its broker arranged carriers to do so.

Lastly, the type of "control" KPS engages in with regard to truck drivers shipping its product is generally limited to the orderly movement of the trucks in and out of its loading bays. It also informs truckers as to which type of materials is required, such as tarps or flatbed trucks. However, that information simply facilitates the shipping by informing a carrier about which tools will be required for the job. Such "control" is not what the statute envisioned for a statutory employer. It does not direct truck drivers on which route to use in transporting product to its customers or any other truck driver activities. Therefore, KPS is not Mr. Osborne's statutory employer. It bears no liability for any workers' compensation benefits Mr. Osborne may be entitled to as a result of his accident.

The Court finds Mr. Osborne to be a credible witness and an exemplary worker, who sustained serious injuries as the result of the October 21, 2016 accident at work.

6

However, the fact remains that neither his employer, Starrun, nor any of the alleged statutory employers are liable to him for workers' compensation benefits. The Court concludes at this time that Mr. Osborne is not likely to succeed at a hearing on the merits in proving that either Meadow Lark or KPS qualify as his statutory employers.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Osborne is not entitled to the requested workers' compensation benefits from Starrun, Meadow Lark, or KPS.

2. This matter is set for a Scheduling Hearing on July 19, 2017, at 10:30 a.m. Eastern Time. The parties must call 855-943-5044 toll-free to participate in the hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to** WCCompliance.Program@tn.gov **no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Worker's Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 8th day of June, 2017.**

_/s/ Brian K. Addington_____
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

7

# APPENDIX

<u>Exhibits:</u>
1. Arial photograph of the KPS facility in Piney Flats, Tennessee
2. Medical Records (Collective)
3. Deposition of Donna Johnson
4. Supply Agreement, KPS/Meadow Lark
5. Broker/Motor Carrier Agreement
6. Addendum to Broker/Motor Carrier Agreement
7. Osborne Request for Admission to KPS and KPS response (Collective)
8. Affidavit of Kevin Bennett with Exhibits
9. Deposition of Darry Osborne
10. Deposition of Michael Kandas
11. Deposition of Barbara Benfit
12. Deposition of Tyson Vanlandingham
13. Affidavit of Darry Osborne

<u>Technical Record</u>
1. Petition for Benefit Determination - Starrun
2. Petition for Benefit Determination - Meadow Lark
3. Petition for Benefit Determination - KPS
4. Dispute Certification Notice - Starrun
5. Dispute Certification Notice - Meadow Lark
6. Dispute Certification Notice - KPS
7. Request for Expedited Hearing
8. Meadow Lark's Pre-Expedited Hearing Brief w/exhibits
9. Mr. Osborne's position statement w/exhibits
10. KPS position statement w/exhibits

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of June, 2017.

| Name | Certified Mail | Via Email | Service sent to: |
| --- | --- | --- | --- |
| Dan Bieger, Esq. Mr. Osborne's Attorney | | X | dan@biegerlaw.com |
| Kevin Washburn, Esq. Meadow Lark's Attorney | | X | kwashburn@allensummers.com |
| Eric Shen, Esq. KPS' Attorney | | X | eric.shen@libertymutual.com |
| Steve Rife, Starrun Employer | X | | PO Box 728 Blountville, TN 37617 |

/s/ Penny Shrum
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**