**FILED**

**November 8, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:10 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD OCTOBER 11, 2017, AT KNOXVILLE)

| | | |
|---|---|---|
| Darry Osborne | ) | Docket No. 2016-02-0562 |
| | ) | |
| v. | ) | State File No. 97626-2016 |
| | ) | |
| Starrun, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims, | ) | |
| Brian K. Addington, Judge | ) | |

---

### Affirmed and Remanded - Filed November 8, 2017

---

The employee, a truck driver, sustained serious injuries when he fell from a flatbed trailer while in the process of tarping his load. His employer did not have workers' compensation insurance. The employee initiated claims for workers' compensation benefits against the employer, the transportation broker that contracted to transport the load, and the manufacturer of the materials loaded on the trailer, asserting the broker and manufacturer were statutory employers. Following an expedited hearing, the trial court determined the employee was unlikely to prevail at trial in establishing that either the broker or the manufacturer were statutory employers as contemplated in Tennessee Code Annotated section 50-6-113 (2017) and denied benefits. The employee has appealed the trial court's determination that the manufacturer is not a statutory employer. We affirm the trial court's order and remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Dan Beiger, Bristol, Tennessee, for the employee-appellant, Darry Osborne

Eric Shen, Brentwood, Tennessee, for the employer-appellee, KPS Global

Kevin W. Washburn, Memphis, Tennessee, for the employer-appellee, Meadow Lark Agency, Inc.

1

**Factual and Procedural Background**

Starrun, Inc. ("Employer"), is a motor carrier headquartered in Bluff City, Tennessee that employed less than five persons at the time of the October 21, 2016 accident giving rise to this claim. Consequently, Employer was not required to carry workers' compensation insurance at the time of the accident and did not have coverage in place.

Darry Osborne ("Employee"), a sixty-nine-year-old resident of Richland, Virginia, was hired by Employer as a commercial truck driver approximately one month before being seriously injured on October 21, 2016. On that date, he traveled to Employer's facility in Bluff City, Tennessee, where Employer provided an "18-wheeler" and flatbed trailer with the equipment necessary to complete an assignment that required him to pick up a load of refrigeration panels at KPS Global ("KPS") in Piney Flats, Tennessee, and deliver the load to KPS's customer in East Liverpool, Ohio. KPS manufactures walk-in coolers and freezers and ships its products in panels from its Piney Flats facility either through coordination with transportation brokers who contract with motor carriers for the loads to be transported, or through coordination with its customers who arrange for the transport of KPS's products themselves. Meadow Lark Agency, Inc. ("Meadow Lark"), is the transportation broker with whom KPS entered into a "Supply Agreement" to transport the load Employee was in the process of tarping when the accident occurred. Employee filed claims for workers' compensation benefits against Employer, KPS, and Meadow Lark, contending the latter two were statutory employers from whom he could recover workers' compensation benefits as contemplated in Tennessee Code Annotated section 50-6-113.

On the day of the accident, Employer provided the documents needed in connection with Employee's assignment and instructed him where to pick up the load. Employee testified that Employer explained "the routine that [he] was show[n] to take and bring the truck into [KPS's facilities]." Upon his arrival at KPS, he parked in a "holding area" and provided his documentation to a KPS employee before being instructed to back into one of two loading docks when a dock became available. Once he backed his truck into the loading dock, a KPS employee loaded panels onto the flatbed trailer with the assistance of a forklift. After the panels were loaded and secured, the forklift operator lifted the tarp that Employee brought with him and placed it on the top of the load. Although the weight of the tarp was disputed, Employee estimated the tarp weighed "about 500 pounds." He testified that KPS's forklift operator did not put the tarp over the load; rather, "[h]e put it on top of the load, and I rolled it out and put it over the load myself." He acknowledged "[i]t was my duty to put the tarp over the load" and testified he "went on top and rolled [his] tarp out and was laying it down over the sides to bungee it down" when a KPS employee told him, "if [he] didn't mind, to pull it on outside," adding "there were four trucks behind [him]."

2

Employee testified that once he pulled outside the covered loading area "when the wind got in under my tarp, it almost slid it off my load. So I parked to where I could bungee cord it down, and that's when the accident happened." He stated he was still on KPS's property at the time of the fall. Describing how the accident occurred, he said "as I went to pull this tarp, my feet come [sic] out from under me, and I went over the front down to the catwalk," which he described as "a platform on the back of the truck that you can walk on." He stated he fell "about ten feet" and landed "facedown on the catwalk." He was transported by ambulance to Bristol Regional Medical Center and diagnosed as having suffered a broken leg, broken vertebrae, broken ribs, and a neck injury. There is no dispute that Employee suffered these injuries as a result of his work-related accident.

The shipping supervisor for KPS, Kevin Bennett, testified that KPS used one of five brokers to ship its products from the Piney Flats facility, unless its customers arranged to pick up products themselves. He testified that when a broker is used, KPS sends a schedule with a pickup date and a delivery date to the brokers and "[i]t is their responsibility to procure equipment to ship the load." He testified Meadow Lark was the broker that agreed to handle the shipment for this job. The contract between Meadow Lark and Employer identified the required equipment for this job to include a flatbed trailer and an "8FT" tarp. Mr. Bennett testified KPS does not hire drivers and does not handle any of the actual shipping of its products. He described the loading process and the instructions given to drivers upon their arrival at KPS's facility, stating the process is the same regardless of whether a broker is used or a customer arranges the shipping.

Mr. Bennett testified that KPS had a tarping machine, but that it wasn't being used because of complaints that the machine had been tearing tarps. He further testified that once KPS performs a final inspection of the load, a check-off sheet is signed and the driver is given a final bill of lading, "signs for it, and then he leaves." He testified the "final approval" by KPS is done before tarping and acknowledged that the final inspection does not include whether the load is properly tarped or even tarped at all. He agreed that KPS's employees have control over the loading of the products and that KPS's employees tell the drivers where to park to tarp their loads.

Following an expedited hearing, the trial court concluded that Employee had not presented sufficient evidence to establish that KPS or Meadow Lark was his statutory employer on the date of injury, "and thus [he was] not likely to prevail at a hearing on the merits on this issue." Employee has appealed only the trial court's determination as to KPS, asserting the trial court erred in concluding KPS did not meet the definition of a statutory employer.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise.

3

*See* Tenn. Code Ann. § 50-6-239(c)(7) (2017) ("There shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise."). However, we review questions of law *de novo* with no presumption of correctness. *See Am. Mining Ins. Co. v. Campbell*, No. M2015-01478-SC-R3-WC, 2016 Tenn. LEXIS 907, at *18 (Tenn. Workers' Comp. Panel Dec. 9, 2016) ("A trial court's conclusions of law are reviewed *de novo* upon the record with no presumption of correctness."). Moreover, the interpretation and application of statutes and regulations concern issues of law, which we review *de novo* with no presumption of correctness afforded to the trial court's findings. *See Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009); *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App Bd. LEXIS 14, at *9 (Tenn. Workers' Comp. App. Bd. May 18, 2015).

## Analysis

"Under the Tennessee Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from the employer." *Fayette Janitorial Servs. v. Kellogg USA, Inc.*, No. W2011-01759-COA-R-CV, 2013 Tenn. App. LEXIS 66, at *7 (Tenn. Ct. App. Feb. 4, 2013); Tenn. Code Ann. § 50-6-103 (2017). However, the Act provides that a principal contractor, intermediate contractor, or subcontractor may be required to pay workers' compensation benefits to an injured worker employed by a subcontractor under certain circumstances:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a).

These provisions have been a part of the Act since its inception in 1919. *See* 1919 Tenn. Pub. Acts, Ch. 123 § 15. Their purpose is to protect injured employees from irresponsible and uninsured subcontractors:

> In enacting Section 50-6-113, the Legislature sought "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation for their workers." Section 50-6-113 "operates by passing along to upstream contractors the responsibility either to require their immediate contractors or subcontractors to provide workers'

4

compensation coverage to their own employees or to be responsible for the coverage themselves." Section 50-6-113 is said to deem such a principal contractor to be the injured employee's "statutory employer."

*Blackwell v. Comanche Constr., Inc.*, No. W2012-01309-COA-R9-CV, 2013 Tenn. App. LEXIS 251, at *13-14 (Tenn. Ct. App. Apr. 15, 2013) (citations omitted).

In the instant case, Employee asserts that KPS is his "statutory employer." He bases this assertion upon the premise that KPS meets at least one of the tests set out in *Lindsey v. Trinity Communications, Inc.*, 275 S.W.3d 411 (Tenn. 2009) for determining whether an entity is a principal contractor. In *Lindsey*, the Supreme Court stated that "[g]enerally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and subcontractor's employees; *or* (3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees." *Id.* at 421 (emphasis added) (citations omitted) (internal quotation marks omitted).

Employee identified three issues in his notice of appeal, asserting that the transporting of KPS's product was part of its business, that tarping the loads was part of KPS's business, and that KPS controlled the tarping process. However, these issues were combined into a single issue in Employee's brief: "[t]he issue is whether the work performed by [Employee] when he was injured is part of the regular business of KPS." Thus, Employee focuses on *Lindsey's* third test under which a company may be determined to be a principal contractor.

The parties have correctly perceived the dispositive issue to be whether KPS is Employee's statutory employer; however, none of the parties addressed in the trial court or on appeal whether Employee was injured "while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor . . . ." Instead, they focused on another requirement of section 50-6-113(a), which is whether KPS is "[a] principal contractor, intermediate contractor or subcontractor . . . ."[1]

In arguing that tarping is part of the regular business of KPS, Employee contends the trial court conflates two separate features of transportation, that is, loading products for shipment and the actual movement of products once they are loaded. He argues that

---

[1] For section 50-6-113(a) to be applicable, there must be a finding that the immediate employer, here, Starrun, Inc., was a subcontractor of KPS or Meadow Lark. *See Blackwell*, 2013 Tenn. App. LEXIS 251, at *20 (holding it was necessary for the court to determine whether the injured employee was employed by a subcontractor before it could analyze whether the alleged principal contractor was the statutory employer of the injured employee). Here, we cannot discern from the record whether the parties presumed that Employer was a subcontractor of KPS or Meadow Lark, and we express no opinion on that issue.

5

"[w]hile KPS employees may not typically drive its product from Point A to Point B, the evidence proves that loading the product and securing the load is the type of work usually performed or assisted by the company's employees." Employee argues the trial court erroneously focused on the transportation of the product in question "when it should have focused on loading the product." Employee's argument necessarily assumes that tarping is part of the loading process.

The uncontradicted testimony from Employee and KPS's witnesses reflects that, while KPS did load the panels onto the trailer, the tarping of the load was a separate process. KPS's shipping supervisor testified the "final approval" by KPS is done before tarping, and he acknowledged that the final inspection does not include whether the load is properly tarped or even tarped at all. KPS required the loads to be tarped to protect the product, but Employee agreed he was responsible for the tarping process. Although a KPS employee placed the tarp on top of the load, Employee testified that KPS's forklift operator did not put the tarp over the load; rather, "[h]e put it on top of the load, and I rolled it out and put it over the load myself." He acknowledged "[i]t was my duty to put the tarp over the load," and he testified he "went on top and rolled my tarp out and was laying it down over the sides to bungee it down" when he was asked by a KPS employee to move his truck outside the covered loading area.

In short, although KPS required that loads be tarped to protect the products, there is insufficient evidence to find that the actual tarping process was part of the regular business of KPS or the type of work usually performed by KPS's employees. Moreover, the evidence of the extent of the control KPS exercised over the process does not preponderate against the trial court's determination that "[s]uch 'control' is not what the statute envisioned for a statutory employer."

**Conclusion**

At this stage of the proceedings, the evidence does not preponderate against the trial court's determination that KPS was not Employee's statutory employer at the time of the accident. Accordingly, the trial court's decision is affirmed and the case is remanded for further proceedings as may be necessary.

**FILED**

**November 8, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:10 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Darry Osborne | ) | Docket No.   2016-02-0562 |
| | ) | |
| v. | ) | State File No.  97626-2016 |
| | ) | |
| Starrun, Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 8th day of November, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Dan Bieger | | | | | X | dan@biegerlaw.com |
| Kevin Washburn | | | | | X | kwashburn@allensummers.com |
| Eric Shen | | | | | X | eric.shen@libertymutual.com |
| Steve Rife | | X | | | | P.O. Box 728, Blountville, TN 37617 |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov